**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                :
UNITED STATES OF AMERICA,                                       :
                                                                :
                               Plaintiff,                       :
                                                                :
                    v.                                          :   Case No. 1:17-Cr-00019
                                                                :
RICHARD USHER,                                                  :
ROHAN RAMCHANDANI, AND                                          :
CHRISTOPHER ASHTON                                              :
                                                                :
                               Defendants.                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


<u>**JOINT PROPOSED REQUESTS TO CHARGE**</u>

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
UNITED STATES OF AMERICA,                                     :
                                                              :
                                    Plaintiff,                :
                                                              :
                        v.                                    :    Case No. 1:17-Cr-00019
                                                              :
RICHARD USHER,                                                :
ROHAN RAMCHANDANI, AND                                        :
CHRISTOPHER ASHTON                                            :
                                                              :
                                    Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## REQUESTS TO CHARGE

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the parties respectfully submit the following proposed jury instructions.

Where there is a disagreement between the parties regarding certain instructions, the parties have included alternative instructions with brief explanations.

Instructions that begin with the prefix 1 are intended to be given at the beginning of trial. Instructions that begin with the prefix 2 are intended to be given during trial. And instructions with the prefix 3 are intended to be given at the end of trial.

The parties respectfully reserve the right to request amended instructions based on the evidence and arguments offered at trial.

## **TABLE OF CONTENTS**

DUTY OF THE JURY................................................................................................... 1

IMPROPER CONSIDERATIONS............................................................................... 2

PRESUMPTION OF INNOCENCE............................................................................ 3

BURDEN OF PROOF .................................................................................................. 4

NO INFERENCE FROM CONDUCT OF COURT .................................................. 5

WHAT IS EVIDENCE ................................................................................................ 6

DIRECT AND CIRCUMSTANTIAL EVIDENCE .................................................. 7

EVALUATION OF EVIDENCE ................................................................................ 8

WHAT IS NOT EVIDENCE....................................................................................... 9

CONDUCT OF THE JURY ...................................................................................... 10

NOTETAKING............................................................................................................ 12

OUTLINE OF TRIAL ............................................................................................... 13

ELEMENTS OF THE SHERMAN ACT OFFENSE CHARGED............................ 14

UNCHARGED CO-CONSPIRATOR....................................................................... 19

WITNESS CREDIBILITY: COOPERATION AND NON-PROSECUTION
AGREEMENTS............................................................................................................ 20

IMPROPER CONSIDERATION OF OFFENSIVE LANGUAGE ........................... 22

ROLE OF THE COURT............................................................................................. 23

ROLE OF THE JURY ............................................................................................... 24

CONDUCT OF COUNSEL........................................................................................ 25

REPRIMAND OF COUNSEL FOR MISCONDUCT ............................................... 26

COUNSEL COOPERATION .................................................................................... 27

IMPROPER CONSIDERATIONS............................................................................. 28

IMPROPER CONSIDERATION OF OFFENSIVE LANGUAGE ........................... 29

PRESUMPTION OF INNOCENCE AND BURDEN OF PROOF ........................... 30

REASONABLE DOUBT DEFINED ........................................................................ 31

WITNESS CREDIBILITY ........................................................................................ 34

WITNESS CREDIBILITY: COOPERATION AND NON-PROSECUTION
AGREEMENTS............................................................................................................ 36

PREPARATION OF WITNESSES ........................................................................... 40

LAW ENFORCEMENT WITNESSES...................................................................... 41

EXPERT WITNESS .................................................................................................. 42

DIRECT AND CIRCUMSTANTIAL EVIDENCE .................................................. 43

SUMMARY OF INDICTMENT ................................................................. 45

SEPARATE CONSIDERATION OF DEFENDANTS.............................................. 48

ACTS AND STATEMENTS OF CO-CONSPIRATORS – ADMISSIBILITY AND USE ........ 49

ELEMENTS OF THE SHERMAN ACT OFFENSE CHARGED............................... 51

SHERMAN ACT FIRST ELEMENT: EXISTENCE OF A CONSPIRACY ............................ 55

PROOF OF THE CHARGED ILLEGAL AGREEMENT............................................ 59

SHERMAN ACT CONSPIRACY SECOND ELEMENT: KNOWINGLY JOINED ................ 62

INTENT TO AGREE ........................................................................... 66

INTENT TO FIX PRICES...................................................................... 67

CONSCIOUS COMMITMENT TO COMMON SCHEME ........................................ 69

SHERMAN ACT CONSPIRACY THIRD ELEMENT: COMMERCE.................................... 70

APPLICATION OF THE SHERMAN ACT ...................................................... 73

PRICE FIXING AND BID RIGGING .......................................................... 75

IGNORANCE OF ANTITRUST LAWS/GOOD FAITH NO DEFENSE.............................. 78

PER SE VIOLATIONS OF THE SHERMAN ACT ............................................... 79

VERTICAL AGREEMENTS .................................................................... 81

THE SHERMAN ACT MAKES ILLEGAL ONLY A NARROW SUBCLASS OF
AGREEMENTS................................................................................ 83

MARKET MAKING EXPLAINED .............................................................. 85

THE POSSIBLE PARTIES TO THE ILLEGAL AGREEMENT: CORPORATIONS.............. 87

BUY/SELL AGREEMENTS AMONG COMPETITORS............................................. 88

EXCHANGES OF INFORMATION ............................................................. 90

EXCHANGING PRICE INFORMATION TO SAFEGUARD AGAINST  CUSTOMER
FRAUD OR DECEPTION ...................................................................... 93

INDEPENDENT ACTION....................................................................... 94

PARALLEL CONDUCT......................................................................... 96

PARALLEL CONDUCT – SHARED CUSTOMS AND NORMS................................... 98

ANCILLIARY AGREEMENTS ................................................................. 100

CONDUCT INCONSISTENT WITH AN ILLEGAL AGREEMENT.................................... 102

DEFENSE THEORY ........................................................................... 103

VENUE ....................................................................................... 104

STATUTE OF LIMITATIONS................................................................. 107

FAIR WARNING .............................................................................. 110

CONSCIOUSNESS OF INNOCENCE.......................................................... 111

PUBLICITY – REMINDER.................................................................... 113

IMPROPER CONSIDERATION OF DEFENDANT'S RIGHT NOT TO TESTIFY .............. 115

CHARTS AND SUMMARIES (ADMITTED AS EVIDENCE).............................................. 116

STIPULATIONS ......................................................................................................... 117

RIGHT TO HEAR TESTIMONY: COMMUNICATIONS WITH COURT............................ 118

DUTY TO DELIBERATE AND REACH UNANIMOUS VERDICT ................................... 119

SELECTION OF FOREPERSON ............................................................................... 120

VERDICT SHEET...................................................................................................... 121

CLARIFICATION OF INSTRUCTIONS ................................................................... 122

## JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 1.1

### DUTY OF THE JURY

You and you alone are the judges or the determiners of the facts in this case.  So you'll hear the evidence, decide what the facts are, and then apply those facts to the law which I will give you. And that's how you'll reach your verdict. In doing so, you must follow the law whether you agree with it or not.[1]

---

[1] *United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171 (S.D.N.Y. Oct. 27, 2017); *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67 (S.D.N.Y. Aug. 8, 2016); *United States v. Kurniawan*, Final Jury Instructions, 12-cr-376 (RMB), Dkt. 109 (S.D.N.Y. Jan. 10, 2014).

## JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 1.2
## **IMPROPER CONSIDERATIONS**

In determining the facts, you must rely upon your own independent recollection of the evidence.  What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence.  If there's any difference or contradiction between what any lawyer has said in their arguments to you and what you decide the evidence showed, or between anything I may have said and what you decide the evidence showed, it is your view of the evidence – not the lawyers' and not mine – that controls.

I also ask you to draw no inference from the fact that upon occasion I may have asked questions of certain witnesses or attorneys.  These questions were intended by me only to clarify things or to move things along, and certainly were not intended to suggest any opinions on my part as to the verdict you should render in this case or whether any of the witnesses may have been more credible than any of the other witnesses.  It is important that you understand that I wish to convey no opinion as to the verdict you should render in this case.

In determining the facts, you must weigh and consider the evidence without regard to sympathy, prejudice or passion for or against any party and without regard to what the reaction of the parties or the public might be to your verdict.  I will later discuss with you how to pass upon the credibility of witnesses.  The one-count indictment in this case is not evidence.  It merely describes the charges made against the defendant.  It is a set of accusations.  It may not be considered by you as evidence of the guilt of the defendant.  Only the evidence or lack of evidence decides that issue.[2]

---

[2] *United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171 (S.D.N.Y. Oct. 13, 2017); *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67 (S.D.N.Y. July 21, 2016); *United States v. Kurniawan*, Final Jury Instruction, 12-cr-376 (RMB), Dkt. 109, (S.D.N.Y. Dec. 17, 2013).

## JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 1.3

## **PRESUMPTION OF INNOCENCE**

Under the law a defendant is presumed to be innocent and he or she cannot be found guilty of the crime charged in the indictment unless a jury, having heard all of the evidence in the case, unanimously decides that the evidence proves his or her guilt beyond a reasonable doubt.[3]

---

[3] *United States v. Rahimi*, Preliminary Jury Instructions, 16-cr-760 (RMB), Dkt. 152 (S.D.N.Y. Sept. 28, 2017); *United States v. Arreola*, Preliminary Jury Instructions, 15-cr-824 (RMB), Dkt. 59 (S.D.N.Y. July 18, 2016); *United States v. Kurniawan*, Preliminary Jury Instructions, 12-cr-376 (RMB), Dkt. 97 (S.D.N.Y. Dec. 9, 2013).

## JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 1.4

### <u>BURDEN OF PROOF</u>

In a criminal case, such as this one, the burden of proof remains with the prosecution.  In order for the jury to return a verdict of guilty, the prosecution must prove beyond a reasonable doubt that a defendant is guilty.  A person charged with a crime has absolutely no burden to prove that he or she is not guilty.[4]

---

[4] *United States v. Rahimi*, Preliminary Jury Instructions, 16-cr-760 (RMB), Dkt. 152 (S.D.N.Y. Sept. 28, 2017); *United States v. Arreola*, Preliminary Jury Instructions, 15-cr-824 (RMB), Dkt. 59 (S.D.N.Y. July 18, 2016); *United States v. Kurniawan*, Preliminary Jury Instructions, 12-cr-376 (RMB), Dkt. 97 (S.D.N.Y. Dec. 9, 2013).

## JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 1.5

## <u>NO INFERENCE FROM CONDUCT OF COURT</u>

You, the jurors, must not take anything I may say or do during the trial as indicating what your verdict should be.  For example, do not be influenced by my taking notes.  What I write down may have nothing do with this trial or with what you will be concerned with during the trial.[5]

---

[5] *United States v. Rahimi*, Preliminary Jury Instructions, 16-cr-760 (RMB), Dkt. 152 (S.D.N.Y. Sept. 28, 2017); *United States v. Arreola*, Preliminary Jury Instructions, 15-cr-824 (RMB), Dkt. 59 (S.D.N.Y. July 18, 2016); *United States v. Kurniawan*, Preliminary Jury Instructions, 12-cr-376 (RMB), Dkt. 97 (S.D.N.Y. Dec. 9, 2013).

## JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 1.6

### <u>WHAT IS EVIDENCE</u>

What is evidence?  You will decide what the facts are from the evidence that will be presented here in the courtroom.  That evidence may consist of the testimony of witnesses, documents, and other things received into evidence as exhibits and any facts on which the lawyers may agree or stipulate to or that I may instruct you to find as facts.[6]

---

[6] *United States v. Rahimi*, Preliminary Jury Instructions, 16-cr-760 (RMB), Dkt. 152 (S.D.N.Y. Sept. 28, 2017); *United States v. Arreola*, Preliminary Jury Instructions, 15-cr-824 (RMB), Dkt. 59 (S.D.N.Y. July 18, 2016); *United States v. Kurniawan*, Preliminary Jury Instructions, 12-cr-376 (RMB), Dkt. 97 (S.D.N.Y. Dec. 9, 2013).

## JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 1.7

## **DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are two kinds of evidence.  One is called direct, the other is circumstantial.  Direct evidence is testimony by a witness about what that witness personally saw or heard or did or felt. Circumstantial evidence is indirect evidence; that is, it is proof of one or more facts from which you can find another fact.

You may consider both direct and circumstantial evidence in deciding this case.  The law permits you to give equal weight to both kinds of evidence or no weight, if that is your determination.  It is up to you, the jurors, to decide how much weight, if any, to give any particular evidence.[7]

---

[7] *United States v. Rahimi*, Preliminary Jury Instructions, 16-cr-760 (RMB), Dkt. 152 (S.D.N.Y. Sept. 28, 2017); *United States v. Arreola*, Preliminary Jury Instructions, 15-cr-824 (RMB), Dkt. 59 (S.D.N.Y. July 18, 2016); *United States v. Kurniawan*, Preliminary Jury Instructions, 12-cr-376 (RMB), Dkt. 97 (S.D.N.Y. Dec. 9, 2013).

## JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 1.8

### EVALUATION OF EVIDENCE

The law does not, however, require you to accept all of the evidence that I do admit.  In determining what evidence you will accept, you must make your own evaluations of the testimony given by each of the witnesses and of the documents presented to you, and you determine the weight you choose to give to each witness's testimony or to an exhibit.  There is no magical formula by which you shall evaluate the testimony or the exhibits.  I will, however, give you some guidelines for determining credibility of witnesses at the end of the case.

At this time, suffice it to say, that you bring with you to this courtroom all of the experience and background of your lives.  You do not leave your common sense outside the courtroom.  The same types of assessments that you use in your everyday dealings are the assessments that you will apply in your jury deliberations.[8]

---

[8] *United States v. Rahimi*, Preliminary Jury Instructions, 16-cr-760 (RMB), Dkt. 152 (S.D.N.Y. Sept. 28, 2017); *United States v. Arreola*, Preliminary Jury Instructions, 15-cr-824 (RMB), Dkt. 59 (S.D.N.Y. July 18, 2016); *United States v. Kurniawan*, Preliminary Jury Instructions, 12-cr-376 (RMB), Dkt. 97 (S.D.N.Y. Dec. 9, 2013).

## JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 1.9

### WHAT IS NOT EVIDENCE

The questions and objections of the attorneys are not evidence, and neither is the testimony that I may instruct you to disregard.  The statements and arguments of the attorneys during any part of the trial are also not evidence.  Further, anything you may see or hear when the Court is not in session, even if what you see or hear is done or said by one of the parties or by one of the witnesses, is not evidence.  Only what is admitted into evidence here in court, when court is in session and when all of the parties and all of the jurors are present, is competent evidence.

At times during the trial, I may sustain objections to questions asked.  And when that happens, I will not permit the witness to answer; or if the witness, as sometimes happens, has already answered, I will instruct that the answer be stricken from the record and that you, the jurors, disregard it and dismiss it from your minds.

In reaching your decision, you may not draw any inference from an unanswered question where an objection has been sustained, nor may you consider testimony that I have ordered stricken from the record if that happens.  The law requires that your decision be made solely upon the evidence before you.  The items I exclude from your consideration will be excluded because they are not legally admissible as evidence.[9]

---

[9] *United States v. Rahimi*, Preliminary Jury Instructions, 16-cr-760 (RMB), Dkt. 152 (S.D.N.Y. Sept. 28, 2017); *United States v. Arreola*, Preliminary Jury Instructions, 15-cr-824 (RMB), Dkt. 59 (S.D.N.Y. July 18, 2016); *United States v. Kurniawan*, Preliminary Jury Instructions, 12-cr-376 (RMB), Dkt. 97 (S.D.N.Y. Dec. 9, 2013).

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 1.10**

**<u>CONDUCT OF THE JURY</u>**

So now a little bit on the conduct of the jury.  There are certain principles governing your conduct as jurors: First, I ask you not to talk to each other about the case or about anyone who has anything to do with it until the end of the case when you go to the jury room to decide or deliberate on your verdict.

Second, please do not talk with anyone else about this case or about anyone who has anything to do with it until the trial has ended and you have been discharged as jurors.  I am using the term "talk" broadly.   I am referring to not only face-to-face or over the phone but also emailing, texting, tweeting, blogging, et cetera.  I am referring to any type of communication in any type of forum, including without limitation Facebook, MySpace, Twitter, Instagram, Snapchat, LinkedIn, YouTube, et cetera.  Additionally, do not remain in the presence of other persons who may be discussing this case face-to-face, orally, or online.  "Anyone else" includes members of your family and your friends.  You may tell family and friends that you are a juror in a case, but do not tell them anything else about the case until after you have been discharged by me.

Third, do not let anyone talk, as I have broadly defined it, to you about the case or about anyone who has anything to do with it.  If someone should try and talk to you about the case, please report that to me immediately.  In this regard, I point out that the attorneys and the defendants are not supposed to talk to jurors even to offer a friendly greeting.  So, if you happen to see any of them outside the courtroom or anybody related to the case, you should ignore them. And if they should ignore you, please don't take offense; they'll only be acting properly by not engaging with you.

Fourth, if there is any, do not read any news, internet stories, articles, blogs, or listen to any radio, TV, or internet reports about the case or about anyone who has anything to do with it.

Fifth, do not do any type of internet searches or any type of investigation about the case or any of the participants in the case on your own.  The bottom line is that the parties are entitled to have you personally render a verdict in this case on the basis of your independent evaluation of the evidence presented in the courtroom.  And obviously speaking to others about the case, including your family members, before you deliberate among yourselves or exposing yourself to evidence outside the courtroom in any way would compromise your jury service and fairness to the parties.[10]

---

[10] *United States v. Rahimi*, Preliminary Jury Instructions, 16-cr-760 (RMB), Dkt. 152 (S.D.N.Y. Sept. 28, 2017); *United States v. Arreola*, Preliminary Jury Instructions, 15-cr-824 (RMB), Dkt. 59 (S.D.N.Y. July 18, 2016); *United States v. Kurniawan*, Preliminary Jury Instructions, 12-cr-376 (RMB), Dkt. 97 (S.D.N.Y. Dec. 9, 2013).

## JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 1.11

### <u>NOTETAKING</u>

You can feel free to take notes.  We will give you pads, in fact, and pens if you don't have them, to take notes during the course of the trial.  We ask you to leave those notes behind every day when you go home and then we'll give them back to you the next day.

One final thing about jury notes: They are not evidence.  They are just guides to help you recall what happened during the case but they cannot and are not considered evidence in the case.[11]

---

[11] *United States v. Arreola*, Preliminary Jury Instructions, 15-cr-824 (RMB), Dkt. 59 (S.D.N.Y. July 18, 2016); *see also United States v. Rahimi*, Preliminary Jury Instructions, 16-cr-760 (RMB), Dkt. 152 (S.D.N.Y. Sept. 28, 2017).

## JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 1.12

## <u>OUTLINE OF TRIAL</u>

Let me outline the trial in terms of general processes.  I will summarize the stages of the trial for you.  First, each side through counsel may – they do not have to but they likely will – make an opening statement.  An opening statement is neither evidence nor argument.  It is an outline of what that party intends to prove at the trial and it is offered to help you follow the evidence.

After the opening statements, the prosecutor will present witnesses and the defense may cross-examine them.  Then the defense may—but does not have to—present witnesses and the prosecutor may cross-examine them if the defense does so.  Possibly, but not necessarily, I may permit the prosecutor to present additional witnesses to rebut the Defendants' evidence, if any.

After that, the attorneys will make their closing arguments to summarize and give you their interpretation of what the evidence showed. The prosecutor will go first, defense counsel second, and then the prosecutor may get a brief reply to the defense. And like opening statements, closing statements are not evidence. After those final closing statements, I will give you instructions on the law and then you will deliberate on your verdict.

Please do not make up your minds about what the verdict should be until after I have instructed you on the law at the end of the case and you have gone to the jury room and you and your fellow jurors have discussed the evidence.  So please keep an open mind until then.  Both parties deserve, and the law requires, that you give them an opportunity to be fully heard.[12]

---

[12] *United States v. Rahimi*, Preliminary Jury Instructions, 16-cr-760 (RMB), Dkt. 152 (S.D.N.Y. Sept. 28, 2017); *States v. Kurniawan*, Preliminary Jury Instructions, 12-cr-376 (RMB), Dkt. 97 (S.D.N.Y. Dec. 9, 2013).

**GOVERNMENT PROPOSED PRELIMINARY INSTRUCTION NO. 1.13**

**ELEMENTS OF THE SHERMAN ACT OFFENSE CHARGED**

In order to find a defendant guilty of the offense charged in the Indictment, the government must prove each of these elements beyond a reasonable doubt:

*First*, that a conspiracy to suppress and eliminate competition for the purchase and sale of the Euro-dollar currency pair existed from at least as early as December 2007 and continuing at least through January 2013;

*Second*, that the defendant in question knowingly joined the conspiracy, that is voluntarily and intentionally joined the conspiracy; and

*Third*, that the conspiracy had the required connection to or effect on U.S. interstate or import commerce, which I will describe for you shortly.

If you find that each of these elements has been proved beyond a reasonable doubt as to a defendant in this case, then you should find that defendant guilty.

If, on the other hand, you find that any of these elements has not been proved beyond a reasonable doubt for a defendant in this case, then you should find that defendant not guilty.[13]

---

[13] 15 U.S.C. §6a; ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases 3-C (2009).

***Defense Objection***:  Defendants object to the Government's proposed instruction and in the alternative propose the instruction on the following page.  The parties' primary area of disagreement is the third element of the Sherman Act.  The Government's formulation of the third element uses language from the FTAIA relating to U.S. "interstate or import commerce" that is most often used in traditional cases involving U.S. domestic conduct.  By contrast, Defendants request that the Court use the standard articulated by the Supreme Court for the extraterritorial reach of the Sherman Act to foreign conduct – namely, that it "was meant to produce and did in fact produce some substantial effect on the United States."  *Hartford Fire Ins. Co. v. California*, 509 US. 764, 796 (1993); *see also United States v. Nippon Paper Indus. Co., Ltd*.. 62 F. Supp. 2d 173, 196 (D. Mass. 1999) (stating that the third element of a foreign conduct case was whether there were "intended and substantial effects on United States commerce").  *Hartford Fire* was decided by the Supreme Court 11 years after the passage of the FTAIA in 1982, involved the conduct of London-based reinsurers, and provides the proper instruction for Sherman Act cases involving foreign conduct.

Furthermore, the Government's citations in this instruction are misleading.  The third element the Government proposes is not in the ABA Model Criminal Instructions at 3-C.  As stated in *Nippon Paper*, another case involving foreign conduct, the third element should employ the "intended and substantial effects on United States commerce" standard that was articulated by the Supreme Court in *Hartford Fire.*

It is common in complex cases (such as antitrust cases) to instruct the jury on the elements of the claim at the beginning of trial.  In this case, it is critical that the jury be instructed on the law in the preliminary instructions so they have some basis to evaluate the evidence they will hear over the ensuing weeks at trial.

## DEFENSE PROPOSED PRELIMINARY INSTRUCTION NO. 1.13

## THE CLAIM AND THE ELEMENTS

The Indictment charges the Defendants with an illegal agreement to restrain trade in violation of the Sherman Act.  In order for one or more of the Defendants to be guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

*First*, the existence of an illegal agreement knowingly formed beginning on or about December 2007 and continuing through January 2013 to suppress and eliminate competition for the purchase and sale of EUR/USD in the United States and elsewhere by fixing, stabilizing, maintaining, increasing, and decreasing the price of EUR/USD in the FX interbank market;

*Second*, that the Defendants knowingly—that is, voluntarily and intentionally—became members of that charged illegal agreement, knowing its unlawful goal and intending to help accomplish it;[14]

*Third*, the government must prove that the charged illegal agreement satisfies two criteria.  The charged illegal agreement must have had a substantial effect in the United States. Each Defendant must have intended the charged agreement to have had a substantial effect in the United States.[15]

---

[14] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 3-C (2009).

[15] *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 (1993) ("[I]t is well established by now that the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States.").

***Government Objection***:  The defense's proposed instruction on the third element of the Sherman Act is a mischaracterization of the law. The third element of the Sherman Act requires that the Government prove beyond a reasonable doubt that either interstate or import commerce was affected by the charged conspiracy. If the jury does not find interstate or import commerce, then alternatively, under the Foreign Trade Antitrust Improvement Act, the jury must find that the conspiracy had a direct, substantial, and reasonably foreseeable effect on U.S. commerce. The defense's proposed third element does not include interstate commerce, import commerce, or the FTAIA standard. Instead, the defense suggests that the "substantial and intended" test established under *Hartford Fire* should replace the third element of the Sherman Act. This is incorrect as a matter of law. The jury should find separately for the *Hartford Fire* standard, as described in the Government's proposed instruction at 3.27, but that standard is not a substitute for the third element of the Sherman Act. Further, the conspiracy *itself* must have a substantial effect in the United States. It is incorrect as a matter of law that each individual defendant must have intended a substantial effect in the United States. Lastly, the Government is prosecuting a *conspiracy*. It is not appropriate for Defendants to change the basis of the Government's charge to an "illegal agreement."

## GOVERNMENT PROPOSED INSTRUCTION DURING TRIAL 2.1

## UNCHARGED CO-CONSPIRATOR

You may not draw any inference, favorable or unfavorable, from the fact that a person or company in addition to the defendant is not on trial here. You also may not speculate as to the reasons why other persons or companies are not on trial. Those matters are wholly outside your concern as jurors and have no bearing on your function as jurors. There is no legal requirement that the government prove its case through any particular means. While you are to carefully consider the evidence presented by the government, you need not speculate as to why they used the techniques that they did, or why they didn't use other techniques. Your concern is to determine whether or not, based on the evidence or lack of evidence, the guilt of the defendants has been proven beyond a reasonable doubt.[16]

---

***Defense Objection***:  Defendants object to the Government's proposed instruction because it incorrectly instructs the jury that it should <u>not</u> consider why other persons (including the Government's cooperating witness) are not on trial.  In fact, the jury should consider the fact that the Government's cooperating witness was given a non-prosecution agreement in weighing his testimony.  In addition, the Government's proposed instruction is could be misleading because there are no other co-conspirators "not on trial" to which this instruction could be referring—other than its cooperating witness.  Finally, the Government's proposed instruction fails to address the motives of the Government's cooperating witness.  As an alternative, Defendants' instruction on the following page is taken directly from Sand, *Modern Federal Jury Instructions* and we request that it be given *before* the Government's cooperating witness is called so the jury has guidance in weighing his testimony.

---

[16] *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67 (S.D.N.Y. July 21, 2016).

## DEFENSE PROPOSED INSTRUCTION DURING TRIAL 2.1

## <u>UNCHARGED CO-CONSPIRATOR</u>

The government has called as a witness a person named by the prosecution as a co-conspirator but who was not charged as a defendant.

For this reason, you should exercise caution in evaluating that witness's testimony and scrutinize it with great care.  You should consider whether the witness has an interest in the case and whether he has a motive to testify falsely.  In other words, ask yourselves whether the witness has a stake in the outcome of this trial.  As I have indicated, the testimony of that witness may be accepted by you if you believe it to be true and it is up to you, the jury, to decide what weight, if any, to give to the testimony of the unindicted co-conspirator.[17]

> ___Government Objection___: The Government proposes using Judge Berman's standard instruction here and moving this to a post-trial instruction after instruction 3.11 on cooperation and non-prosecution agreements.

---

[17] Sand, *Modern Federal Jury Instructions*, Instr. 7-7.

## DEFENSE PROPOSED INSTRUCTION DURING TRIAL 2.2

## WITNESS CREDIBILITY: COOPERATION AND NON-PROSECUTION AGREEMENTS

You also have heard testimony from a witness who has entered into a non-prosecution and cooperation agreement with the government.  These agreements generally provide that the witness, who is required to provide "full, truthful, and continuing cooperation," will not be prosecuted criminally by the government for any defined act or offense committed prior to the date of the non-prosecution agreement.  A person who "fails to comply fully with his obligations" under the non-prosecution agreement loses his guarantee of non-prosecution.  The wisdom or propriety of the policy permitting the government to enter into non-prosecution and cooperation agreements is not a proper matter for you to consider.  Such agreements are permissible.  In evaluating the testimony of the witness subject to the non-prosecution agreement, you should consider the extent, if any, to which or whether that witness's testimony may have been influenced by this benefit.[18]  You are not to convict a Defendant based on the unsupported testimony of such a witness, standing alone, unless you believe his testimony beyond a reasonable doubt. [19]

You should bear in mind that testimony from such a witness is always to be received with caution and weighed with great care.[20]

---

[18] ABA Section of Antitrust Law, *Model Criminal Antitrust Jury Instructions* 4-C-4 (2009) (quoted language modified to reflect the relevant non-prosecution agreement); *see also United States v. Tokai Kogyo Co.*, Final Jury Instructions, 16-cr-63 (TSB), Dkt. 235 (S.D. Ohio Nov. 6, 2017); *United States v. Marr*, Final Jury Instructions, 14-cr-580 (PJH), Dkt. 301 (N.D. Cal. June 2, 2017); *United States v. Taubman*, Final Jury Instructions, 01-cr-429 (GBD) (S.D.N.Y. Dec. 4, 2001); *United States v. Stora Enso North America Corp.*, Final Jury Instructions, 06-cr-323 (D. Conn. July 19, 2007).

[19] *United States v. Tokai Kogyo Co.*, Final Jury Instructions, 16-cr-63 (TSB), Dkt. 235 (S.D. Ohio Nov. 6, 2017), at 32 ("You are not to convict the defendants based on the unsupported testimony of such a witness, standing alone, unless you believe his testimony beyond a reasonable doubt.").

[20] ABA Section of Antitrust Law, *Model Criminal Antitrust Jury Instructions* 4-C-4 (2009).

**_Government Objection_**: The Government proposes moving this to a post-trial instruction at 3.11 and using Judge Berman's instruction (language found at 3.11). The Government believes reading this instruction during the trial before the cooperating witness' testimony is duplicative and places an unnecessary emphasis on that witness' testimony. Reading this instruction after trial is more appropriate.

**_Defense Comment_**:  Given the degree to which the Government's case relies on its cooperating witness, and the fact that his non-prosecution agreement will likely factor into his testimony, it is critical that the jury be instructed how to evaluate his testimony *before* he testifies.  In addition, Defendant's proposed instruction is a correct description of the law based on the ABA Criminal Antitrust Model and several recent antitrust cases.

**DEFENSE PROPOSED INSTRUCTION DURING TRIAL NO. 2.3**

**IMPROPER CONSIDERATION OF OFFENSIVE LANGUAGE**

You have seen evidence in the form of chatroom communications that contain offensive language.  In reaching your decision as to whether the government sustained its burden of proof, you must disregard any views you may have on the use of language you find offensive.  Such language was not uncommon in chatroom communications among members of the FX industry.  You should consider the chat language admitted in this case only for the purpose of determining whether the Defendants are guilty of the crime of price-fixing and for no other purpose.

---

*__Government Objection__*:  The Government does not object to the proposed language of this instruction, but suggests that the Court may prefer to deal with this issue in another way, such as through voir dire.

*__Defense Comment__*:  The parties' exhibits contain a significant amount of offensive language. It is critical that the jury be instructed during trial, as the evidence is being introduced, that it should disregard any personal views concerning the offensiveness of Defendants' language in reaching the ultimate issue in this case.

---

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.1

## ROLE OF THE COURT

You have now heard all of the evidence in the case, as well as the final arguments of the lawyers for both sides.

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and what evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

As I said before, you will receive a copy of these instructions to take with you into the jury room, along with a verdict sheet to be filled out by the jurors.  Your decision, your verdict, must be unanimous.  You should not, any of you, be concerned about the wisdom of any rule that I state regardless of any opinion that you may have as to what the law may be or ought to be.  It would violate your sworn duty to base a verdict upon any other view of the law than the one I give you.[21]

---

[21] Sand, *Modern Federal Jury Instructions*, Instr. 2-2; *United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171 (S.D.N.Y. Oct. 13, 2017); *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67 (S.D.N.Y. July 21, 2016).

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.2

### ROLE OF THE JURY

It is your duty as jurors to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and what evidence is relevant under the law for your consideration.  On these legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.  And you should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.  And as I mentioned to you before, you will each receive a copy of these instructions – along with a verdict sheet to be filled out by the jury – to take with you into the jury room.  Your decision, your verdict, must be unanimous.  You should not, any of you, be concerned about the wisdom of any rule that I state.  Regardless of any opinion that you might have as to what the law may be – or ought to be – it would violate your sworn duty to base a verdict upon any view of the law other than the one I give to you in these instructions.  Your role, as I've said earlier, is to consider and decide the fact issues in this case.  You, the members of the jury, are the sole and exclusive determiners of the facts.  You pass upon the evidence; you determine the credibility or believability of the witnesses; you resolve whatever conflicts may exist in the testimony; and you draw whatever reasonable inferences and conclusions you decide to draw from the facts as you have determined them; and you determine the weight of the evidence as well.[22]

---

[22] *United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171, 45-46 (S.D.N.Y. Oct. 13, 2017); *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67, 59-60 (S.D.N.Y. July 21, 2016); *United States v. Kurniawan*, Final Jury Instruction, 12-cr-376 (RMB), Dkt. 109, 174-75 (S.D.N.Y. Dec. 17, 2013).

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.3

### <u>CONDUCT OF COUNSEL</u>

You should draw no inference or conclusion for or against any party by reason of lawyers making objections or my rulings on such objections.  Counsel have not only the right but the duty to make legal objections when they think that such objections are appropriate.  You should not be swayed for or against either side simply because counsel for any party has chosen to make an objection, nor should you be swayed by any ruling I made on an objection.  Whether or not I may have sustained more objections for one side or the other has no bearing on your function to consider all of the evidence that was admitted during the trial.

Further, please do not concern yourself with what was said at sidebar conferences or during my discussions with counsel, nor does it make any difference whether any lawyer or I asked for a sidebar conference.  Those discussions related to rulings of law and not to matters of fact.

If an objection is sustained, you must not speculate as to what might have been said had the evidence been allowed.  Nor may you consider in evidence any statement where an objection was made and sustained even though you may have heard it before the objection and the ruling by me.[23]

---

[23] *United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171 (S.D.N.Y. Oct. 13, 2017); *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67 (S.D.N.Y. July 21, 2016); *United States v. Kurniawan*, Final Jury Instructions, 12-cr-376 (RMB), Dkt. 109 (S.D.N.Y. Dec. 17, 2013); *see also* Sand, *Modern Federal Jury Instructions*, Instr. 2-8.

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.4

## REPRIMAND OF COUNSEL FOR MISCONDUCT

At times I may have admonished a lawyer or a witness or directed a witness to be responsive to questions or to keep his or her voice up.  At times I may have questioned a witness myself or made comments to a lawyer.  Any questions that I asked or instructions or comments that I gave were intended only to move things along or to clarify the presentation of evidence and to bring out something which I thought may have been unclear.  You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case by reason of any comment, question or instruction of mine.  Nor should you infer that I have any views as to the credibility of any witness, as to the weight of the evidence or as to how you, the jury, should decide any issue that is before you.  That is entirely your role.[24]

> ***Joint Comment***: The parties propose that this instruction be read only if applicable.

---

[24] *United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171 (S.D.N.Y. Oct. 13, 2017); *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67 (S.D.N.Y. July 21, 2016); *United States v. Kurniawan*, Final Jury Instructions, 12-cr-376 (RMB), Dkt. 109 (S.D.N.Y. Dec. 17, 2013); *see also* Sand, *Modern Federal Jury Instructions*, Instr. 2-9.

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.5

## **COUNSEL COOPERATION**

You have noticed throughout the trial that counsel for the Defendants have consulted

with each other and have divided the work of the trial in an effort to facilitate their presentation

and to avoid duplication.  The fact that defense counsel have consulted and cooperated with each

other in the conduct of their defense is not to be considered by you as having any significance

with respect to the issues in the case.[25]

---

[25] Sand, *Modern Federal Jury Instructions*, Instr. 2-10.

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.6

## IMPROPER CONSIDERATIONS

In determining the facts, you must rely upon your own independent recollection of the evidence.  What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence.  If there's any difference or contradiction between what any lawyer has said in their arguments to you and what you decide the evidence showed, or between anything I may have said and what you decide the evidence showed, it is your view of the evidence – not the lawyers' and not mine – that controls.

I also ask you to draw no inference from the fact that upon occasion I may have asked questions of certain witnesses or attorneys.  These questions were intended by me only to clarify things or to move things along, and certainly were not intended to suggest any opinions on my part as to the verdict you should render in this case or whether any of the witnesses may have been more credible than any of the other witnesses.  It is important that you understand that I wish to convey no opinion as to the verdict you should render in this case.

In determining the facts, you must weigh and consider the evidence without regard to sympathy, prejudice or passion for or against any party and without regard to what the reaction of the parties or the public might be to your verdict.  I will later discuss with you how to pass upon the credibility of witnesses.  The one-count indictment in this case is not evidence.  It merely describes the charges made against the defendant.  It is a set of accusations.  It may not be considered by you as evidence of the guilt of the defendant.  Only the evidence or lack of evidence decides that issue.[26]

---

[26] *United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171, 45-46 (S.D.N.Y. Oct. 13, 2017); *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67, 59-60 (S.D.N.Y. July 21, 2016); *United States v. Kurniawan*, Final Jury Instruction, 12-cr-376 (RMB), Dkt. 109, 174-75 (S.D.N.Y. Dec. 17, 2013).

**DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.7**

**IMPROPER CONSIDERATION OF OFFENSIVE LANGUAGE**

You have seen evidence in the form of chatroom communications that contain offensive language.  In reaching your decision as to whether the government sustained its burden of proof, you must disregard any views you may have on the use of language you find offensive.  Such language was not uncommon in chatroom communications among members of the FX industry. You should consider the chat language admitted in this case only for the purpose of determining whether the Defendants are guilty of the crime of price-fixing and for no other purpose.

---

*__Government Objection__*:  This instruction is identical to Proposed Instruction during trial at 2.3. The Government does not object to the proposed language of this instruction, but suggests that the Court may prefer to deal with this issue in another way, such as through voir dire. If the Court prefers to give this instruction instead, the Government suggests that it need only be given once.

*__Defense Comment__*:  The parties' exhibits contain a significant amount of offensive language. It is critical that the jury be reminded at the end of trial that it should disregard any personal views concerning the offensiveness of Defendants' language in reaching the ultimate issue in this case.

---

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.8

### PRESUMPTION OF INNOCENCE AND BURDEN OF PROOF

The Defendants have pleaded not guilty to the charges in the Indictment.  As a result of their plea of not guilty, the burden is on the prosecution – that is to say, the government – to prove the Defendants' guilt beyond a reasonable doubt.

This burden never shifts to a defendant for the simple reason that the law never imposes upon a defendant in a criminal case the burden or duty of testifying himself or herself or calling any witness or of locating or producing any evidence.

The law presumes that every defendant is innocent of all the charges against him or her. I, therefore, instruct you that each Defendant is to be presumed by you to be innocent when the trial began, at this very moment, and throughout your deliberations and until such time, if it comes, that you as a jury are unanimously satisfied that the government has proved that Defendant guilty beyond a reasonable doubt.

The presumption of innocence alone is sufficient to acquit a Defendant unless you as jurors are unanimously convinced beyond a reasonable doubt of his guilt, after a careful and impartial consideration of all of the evidence in this case.  If the government fails to sustain its burden with respect to any element of the count as to any Defendant, you must find that Defendant not guilty.

The burden is always upon the government to prove guilt beyond a reasonable doubt. This burden, as I've said, never shifts to a defendant, for the law never imposes upon a defendant in a criminal case the burden or duty of testifying or of calling any witnesses or producing any evidence.[27]

---

[27] *United States v. Kurniawan*, Final Jury Instructions, 12-cr-376 (RMB), Dkt. 109 (S.D.N.Y. Dec. 17, 2013); *see also* Sand, *Modern Federal Jury Instructions*, 4-1.

## GOVERNMENT PROPOSED FINAL INSTRUCTION NO. 3.9

### REASONABLE DOUBT DEFINED

It is not required that the government prove guilt beyond all possible doubt.  The test is one of reasonable doubt.  A reasonable doubt is a doubt based upon reason and common sense, the kind of doubt that would make a reasonable person hesitate to act.  Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs.[28]

Unless the government proves beyond a reasonable doubt that the defendant has committed each and every element of an offense charged in the Indictment, you must find the defendant not guilty of that offense.  If the jury views the evidence as a whole in the case as reasonably permitting either of two conclusions – one of innocence, the other of guilt – then the jury must, of course, adopt the conclusion of innocence.  The absence of evidence in a criminal case is a valid basis for reasonable doubt.[29]

> ***Defense Objection***:  Defendants object to the Government's proposed instruction and propose their alternative instruction on the following page.  Defendant's proposal provides a more comprehensive instruction regarding reasonable doubt and was used recently by this court in the *United States v. Arreola*.

---

[28] *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67, 59-60 (S.D.N.Y. July 21, 2016).

[29] *United States v. Kurniawan*, Final Jury Instructions, 12-cr-376 (RMB), Dkt. 109 (S.D.N.Y. Dec. 17, 2013).

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.9

### <u>REASONABLE DOUBT DEFINED</u>

I have said that the government must prove the defendant guilty beyond a reasonable doubt. The question naturally is, what is reasonable doubt? The answer is that the words almost define themselves. It is a doubt based upon reason and common sense. It is a doubt that a reasonable person has after carefully weighing all of the evidence. It is a doubt which would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life.

Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs. A reasonable doubt is not a caprice or a whim; it is not a speculation or a suspicion. It is not an excuse to avoid the performance of an unpleasant duty. And it is not sympathy.

In a criminal case, the burden is at all times upon the government to prove guilt beyond a reasonable doubt. The law does not require that the government prove guilt beyond all possible doubt; proof beyond a reasonable doubt is what is required. The burden never shifts to the defendant, which means that it is always the government's burden to prove each of the elements of the crime charged beyond a reasonable doubt.[30]

Unless the government proves beyond a reasonable doubt that the Defendant has committed each and every element of an offense charged in the Indictment, you must find that Defendant not guilty of that offense. If the jury views the evidence as a whole in the case as reasonably permitting either of two conclusions – one of innocence, the other of guilt – then the

---

[30] *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67 (S.D.N.Y. July 21, 2016); Sand, *Modern Federal Jury Instructions*, Instr. 4-2.

jury must, of course, adopt the conclusion of innocence.  The absence of evidence in a criminal

case is a valid basis for reasonable doubt.[31]

> **_Government Objection_**:  The Government proposes using Judge Berman's standard
> instruction here which efficiently addresses the standard.

---

[31] *United States v. Kurniawan*, Final Jury Instructions, 12-cr-376 (RMB), Dkt. 109 (S.D.N.Y. Dec. 17, 2013).

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.10

### <u>WITNESS CREDIBILITY</u>

You have now had the opportunity to observe all of the witnesses, and it's now your job to decide how believable each witness was in his or her testimony.  You are the sole determiners of the credibility of each witness and of the importance of witness testimony.

So how do you determine where the truth lies?  You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday lives.  You should consider any bias or hostility that a witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.

You should consider the opportunity the witness had to see, hear, and know the things about which they testified, the accuracy of their memory, their candor or lack of candor, their intelligence, the reasonableness and probability of their testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other believable testimony.  You watched the witnesses testify.  Everything a witness said or did on the witness stand counts in your determination.  How did the witness appear?  What was the witness's demeanor while testifying?  Often it is not what people say but how they say it that moves us.

In deciding whether to believe a witness, keep in mind that people sometimes forget things.  You need to consider, therefore, whether in such a situation the witness's testimony reflects an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.

If you find that any witness has willfully testified falsely as to any material fact – that is to say, an important matter – the law permits you to disregard completely the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to

testify falsely about everything.  You are not required, however, to consider such a witness as totally unworthy of belief.  And so you may accept so much of the witness's testimony as you deem true and disregard what you feel is false.  As the sole judges of the facts, you, the jurors, must decide which of the witnesses you will believe, what portion of their testimony you accept, and what weight you will give to it.[32]

---

[32] *United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171 (S.D.N.Y. Oct. 13, 2017); *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67 (S.D.N.Y. July 21, 2016); *United States v. Kurniawan*, Final Jury Instructions, 12-cr-376 (RMB), Dkt. 109 (S.D.N.Y. Dec. 17, 2013).

**GOVERNMENT PROPOSED FINAL INSTRUCTION NO. 3.11**

<u>WITNESS CREDIBILITY: COOPERATION AND
NON-PROSECUTION AGREEMENTS</u>

You have heard testimony from a witness who has entered into a cooperation and non-prosecution agreement with the government.  Experience will tell you that the government frequently must rely on the testimony of witnesses who admit participating in crimes.  The government must take its witnesses as it finds them and frequently must use such testimony in a criminal prosecution because otherwise it would be difficult or impossible to detect and prosecute wrongdoers.  The fact that a witness has admitted a crime can be considered by you as bearing upon his or her credibility.  However, it does not follow that simply because a person has admitted to participating in one or more crimes, that he is incapable of giving a truthful version of what happened.  In evaluating the testimony of such a witness, a cooperating witness, you should ask yourselves whether he would benefit more by lying or by telling the truth.  Was his testimony made up in any way because he believed or hoped that he would somehow receive favorable treatment by testifying falsely?  Or did he believe that his interests would best be served by testifying truthfully?  If you believe that the witness was motivated by hopes of personal gain, was that motivation one which would cause him to lie, or was it one which would cause him to tell the truth?  Did this motivation color his testimony?  If you find that the defendant was false, you should reject it.  However, if, after a careful examination of the testimony and demeanor of the witness on the stand, you are satisfied that the witness told the truth, you should accept it as credible and act upon it accordingly.  As with any witness, let me emphasize that the issue of credibility need not be decided in an all-or-nothing fashion.  Even if you find that a witness testifies falsely in one respect, you still may accept his or her testimony in

other parts, or may disregard all of it. That is a determination entirely for you, the jury.[33]

***Defense Objection***:  Defendants object to the Government's proposed instruction and propose their alternative instruction on the following page.  The Government's proposed instruction incorrectly states that the jury "must" rely on the testimony of witnesses who admit participating in crimes and it provides the unnecessary commentary that "it would be difficult or impossible to prosecute wrongdoers" without such testimony.  By contrast, Defendant's proposal provides a much more neutral instruction to the jury on how to weigh the testimony of a cooperating witness who entered into a non-prosecution agreement and it is based on the instructions given in a series of recent criminal antitrust cases.

---

[33] *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67 (S.D.N.Y. July 21, 2016).

**DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.11**

### WITNESS CREDIBILITY: COOPERATION AND NON-PROSECUTION AGREEMENTS

You also have heard testimony from a witness who has entered into a non-prosecution and cooperation agreement with the government. These agreements generally provide that the witness, who is required to provide "full, truthful, and continuing cooperation," will not be prosecuted criminally by the government for any defined act or offense committed prior to the date of the non-prosecution agreement. A person who "fails to comply fully with his obligations" under the non-prosecution agreement loses his guarantee of non-prosecution. The wisdom or propriety of the policy permitting the government to enter into non-prosecution and cooperation agreements is not a proper matter for you to consider. Such agreements are permissible. In evaluating the testimony of the witness subject to the non-prosecution agreement, you should consider the extent, if any, to which or whether that witness's testimony may have been influenced by this benefit.[34] You are not to convict the Defendants based on the unsupported testimony of such a witness, standing alone, unless you believe his testimony beyond a reasonable doubt. [35]

You should bear in mind that testimony from such a witness is always to be received with caution and weighed with great care.[36]

---

[34] ABA Section of Antitrust Law, *Model Criminal Antitrust Jury Instructions* 4-C-4 (2009) (quoted language modified to reflect the relevant non-prosecution agreement); *see also United States v. Tokai Kogyo Co.*, Jury Instructions, 16-cr-63 (TSB), Dkt. 235 (S.D. Ohio Nov. 6, 2017); *United States v. Marr*, Final Jury Instructions, 14-cr-580 (PJH), Dkt. 301 (N.D. Cal. June 2, 2017); *United States v. Taubman*, Final Jury Instructions, 01-cr-429 (GBD) (S.D.N.Y. Dec. 4, 2001); *United States v. Stora Enso North America Corp.*, Final Jury Instructions, 06-cr-323 (D. Conn. July 19, 2007).
[35] *United States v. Tokai Kogyo Co.*, Jury Instructions, 16-cr-63 (TSB), Dkt. 235 (S.D. Ohio Nov. 6, 2017).
[36] ABA Section of Antitrust Law, *Model Criminal Antitrust Jury Instructions* 4-C-4 (2009).

***Government Objection***: The Government proposes using Judge Berman's standard instruction here.

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.12

### PREPARATION OF WITNESSES

Although you may consider that fact when you are evaluating a witness' credibility, you should keep in mind that there is nothing either unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. Such consultation helps conserve your time and the Court's time. In fact, it would be unusual for a lawyer to call a witness without having such consultation beforehand.

The weight you give to the fact or the nature of a witness' preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion as jurors.[37]

---

[37] *United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171 (S.D.N.Y. Oct. 13, 2017).

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.13

## <u>LAW ENFORCEMENT WITNESSES</u>

You have heard testimony in this case of one or more witnesses who were employed as law enforcement officers.  The fact that a witness may be employed by the government as a law enforcement officer does not mean that his or her testimony is necessarily deserving of any more or less consideration than that of an ordinary witness.

As with other witnesses, you may consider whether that person's testimony is colored by a personal or professional interest in the outcome of the case. It is your decision, after reviewing all of the evidence, to give the testimony of a law enforcement witness whatever weight, if any, you think it deserves.[38]

---

[38] *United States v. Kurniawan*, Final Jury Instruction, 12-cr-376 (RMB), Dkt. 109, 201 (S.D.N.Y. Dec. 17, 2013); *see also United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171, 102 (S.D.N.Y. Oct. 13, 2017); *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67, 66 (S.D.N.Y. July 21, 2016).

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.14

### EXPERT WITNESS

An expert is allowed to express his or her opinion on those matters about which he or she has special knowledge and training.  Expert testimony is presented to you on the theory that someone who is experienced in a particular field can assist you in understanding the evidence or in reaching an independent decision on the facts.  In weighing the expert's testimony, you may consider the expert's qualifications, his or her opinions, and his or her reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence in the case.

You should not, however, accept a witness's testimony merely because he or she is an expert.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you, the jury.  All experts, having been qualified and accepted as experts by the Court, stand equally before you, the jury, and it is up to you to decide how to choose to accept or reject and/or utilize their testimony, or any part thereof, in your deliberations.[39]

---

[39] *United States v. Kurniawan*, Final Jury Instruction, 12-cr-376 (RMB), Dkt. 109, 203-04 (S.D.N.Y. Dec. 17, 2013); *see also United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171, 53 (S.D.N.Y. Oct. 13, 2017).

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.15

### DIRECT AND CIRCUMSTANTIAL EVIDENCE

The evidence from which you are to decide what the facts are consists of the following: First, the sworn testimony of witnesses, on both direct and cross-examination, regardless of who called the witness; second, the documents and exhibits that were received in evidence; and, third, any facts or testimony to which the lawyers have agreed or stipulated.  Nothing else is evidence.

There are these two kinds of evidence: One is called direct and the other is circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally experienced through his or her own senses; something seen, felt, touched, heard or tasted.  Direct evidence may also be in the form of an exhibit where the fact to be proven is its present existence or condition.  Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts.  And there's a simple example of circumstantial evidence which we usually say and usually use which goes as follows: We ask the jury to assume that when they came into the courthouse this morning, the sun was shining and it was a nice day.  It's a hypothetical. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, on the facts that I've asked you to assume, assume that someone walks in the back with an umbrella that is dripping wet.  And then assume further that a few minutes later another person also entered with a wet umbrella.  Now, on the facts I gave you and asked you to assume, you cannot look outside of the courtroom and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of facts which I have asked you to assume, it would be reasonable for you to conclude that it had been raining. That's all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or nonexistence of some other fact. Circumstantial evidence is of no less value than direct evidence.  The law makes no distinction

43

between direct and circumstantial evidence, but simply requires that your verdict must be based on all the evidence presented.[40]

---

[40] *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67, 67-68 (S.D.N.Y. July 21, 2016); *see also United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171, 54-55 (S.D.N.Y. Oct. 13, 2017); *United States v. Kurniawan*, Final Jury Instruction, 12-cr-376 (RMB), Dkt. 109, 182-83 (S.D.N.Y. Dec. 17, 2013).

## GOVERNMENT PROPOSED FINAL INSTRUCTION NO. 3.16

## SUMMARY OF INDICTMENT

The Indictment in this case contains one count, which arises under a federal law known as the Sherman Act.  The purpose of the Sherman Act is to preserve and encourage free competition in the marketplace by preventing unreasonable restraint of any business or industry, so that the consuming public may receive better goods and services at a lower cost.[41]  In its Indictment, the government alleges that from at least December 2007 through at least January 2013, Defendants, and their co-conspirators, participated in a conspiracy to suppress and eliminate competition for the purchase and sale of the Euro/Dollar currency pair in the United States and elsewhere by fixing, stabilizing, maintaining, increasing, and decreasing the price of, and rigging bids and offers for, the Euro/Dollar currency pair in the FX interbank market.  The government alleges that the conspiracy engaged in by Defendants and their co-conspirators unreasonably restrained U.S. interstate and U.S. import trade and commerce in violation of Section 1 of the Sherman Act.[42]

The Defendants deny the charge.[43]

---

[41] *United States v. Tokai Kogyo Co.*, Jury Instructions, 16-cr-63 (TSB), Dkt. 235 (S.D. Ohio Nov. 6, 2017).
[42] *United States v. Usher*, Indictment ¶ 18, 17-cr-19 (RMB) (S.D.N.Y. Jan. 10, 2017).
[43] *United States v. Tokai Kogyo Co.*, Jury Instructions, 16-cr-63 (TSB), Dkt. 235 (S.D. Ohio Nov. 6, 2017).

**_Defense Objection_**:  Defendants object to the Government's proposed instruction and provide an alternative instruction on the following page.  The instruction should focus on the summary of the Indictment; any language describing the underlying purpose of the Sherman Antitrust Act (sentence 2) is not part of the charges and unnecessary in describing the Indictment.  Additionally, Defendants object to the statement that Defendants are charged with "bid rigging" because this is a price fixing action with no indicia of "bid rigging."  The Antitrust Division website acknowledges that bid rigging is not the same as price fixing.  *See* Defense Objection to Government Proposed Final Jury Instruction 3.28.

Defendants' proposed instruction provides a more neutral and accurate summary of the charges.

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.16

## SUMMARY OF INDICTMENT

The Indictment in this case contains one count, which arises under a federal law known as the Sherman Act.  In its Indictment, the government claims that from at least December 2007 through at least January 2013, Defendants, and their co-conspirators, continuously participated in an illegal agreement to suppress and eliminate competition for the purchase and sale of the Euro/U.S. Dollar currency pair in the United States and elsewhere by fixing, stabilizing, maintaining, increasing, and decreasing the price of the Euro/U.S. Dollar currency pair in the FX interbank market.  The government alleges that the combination and illegal agreement engaged in by Defendants and their co-conspirators unreasonably restrained U.S. interstate and U.S. import trade and commerce in violation of Section 1 of the Sherman Act.[44]

The Defendants deny the charge.[45]

---

***Government Objection***: The Government proposes inserting context to the Sherman Act to assist the jury as was done in *United States v. Tokai Kogyo Co.*, Jury Instructions, 16-cr-63 (TSB), Dkt. 235 (S.D. Ohio Nov. 6, 2017) ("The purpose of the Sherman Act is to preserve and encourage free competition in the marketplace by preventing unreasonable restraint of any business or industry, so that the consuming public may receive better goods and services at a lower cost.").  Further, "and rigging bids and offers for" was charged in the indictment and should be inserted to be accurate and consistent.

---

[44] *United States v. Usher*, Indictment ¶ 18, 17-cr-19 (RMB) (S.D.N.Y. Jan. 10, 2017).
[45] *United States v. Tokai Kogyo Co.*, Jury Instructions, 16-cr-63 (TSB), Dkt. 235 (S.D. Ohio Nov. 6, 2017).

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.17

## SEPARATE CONSIDERATION OF DEFENDANTS

The Indictment names Mr. Richard Usher, Mr. Rohan Ramchandani, and Mr. Christopher Ashton Defendants who are on trial together.  In reaching a verdict, however, you must bear in mind that guilt is individual.  Your verdict as to each Defendant must be determined separately with respect to him, solely on the evidence, or lack of evidence, presented against him without regard to the guilt or innocence of anyone else.[46]  Each Defendant is entitled to have his case decided on the evidence and the law applicable to him, as if the defendant were being tried alone.[47]

---

[46] Sand, *Modern Federal Jury Instructions*, Instr. 3-5; *see also United States v. Marr*, Final Jury Instructions, 14-cr-580 (PJH), Dkt. 301 (N.D. Cal. June 2, 2017); *United States v. AU Optronics Corp.*, Final Jury Instructions, 09-cr-01109 (SI), Dkt. 829, (N.D. Cal Mar. 1, 2012); *United States v. Mrs. Baird's Bakeries*, Final Jury Instructions, 95-cr-294 (JLB) (N.D. Tex. Feb. 9, 1996).
[47] ABA Section of Antitrust Law, *Model Criminal Antitrust Jury Instructions* 2-B-1 (2009).

**GOVERNMENT PROPOSED FINAL INSTRUCTION NO. 3.18**

<u>**ACTS AND STATEMENTS OF CO-CONSPIRATORS – ADMISSIBILITY AND USE**</u>

If you find beyond a reasonable doubt that the defendant whose guilt you are considering was a member of the conspiracy charged in the Indictment, then any acts done or statements made in furtherance of the conspiracy by persons also found by you to have been members of that conspiracy may be considered against the defendant.  This is so even if such acts were done and statements were made in the defendant's absence and/or without his knowledge.

Before you may consider the statements or acts of a conspirator in deciding the issue of the defendant's guilt, you must first determine that the acts and statements were made during the existence and in furtherance of the unlawful scheme.  If the acts were done or the statements made by someone whom you do not find to be a member of the conspiracy, or if they were not done or said in furtherance of the conspiracy, then they may be considered by you as evidence only against the person who did or said them.

The reason for allowing this evidence to be admitted and used against the defendant has to do with the nature of the crime of conspiracy.  Conspiracy is often referred to as a partnership in crime.  Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the statements, and omissions of any member of the conspiracy made in furtherance of the common purpose of the conspiracy are deemed under the law to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements, and omissions.[48]

---

[48] ABA Section of Antitrust Law, *Model Criminal Antitrust Jury Instructions* 4-B-6 (2009).

***Defense Objection***:  Defendants object to this instruction, which is unnecessary and confusing. The admissibility of evidence at trial will be based on stipulations entered by the parties and rulings by the Court.  Based on this instruction, the jury would be reasonable (but incorrect) in believing that admissibility determinations are part of their role.

***Government Comment***:  Statements made by a party's coconspirator are routinely admitted pursuant to Federal Rule of Evidence 801(d)(2)(E). The Government's proposed instruction is consistent with FRE Rule 801.

**GOVERNMENT PROPOSED FINAL INSTRUCTION NO. 3.19**

**ELEMENTS OF THE SHERMAN ACT OFFENSE CHARGED**

In order to find a defendant guilty of the offense charged in the Indictment, the government must prove each of these elements beyond a reasonable doubt:

*First*, that a conspiracy to suppress and eliminate competition for the purchase and sale of the Euro-dollar currency pair existed from at least as early as December 2007 and continuing at least through January 2013;

*Second*, that the defendant in question knowingly joined the conspiracy, that is voluntarily and intentionally joined the conspiracy; and

*Third*, that the conspiracy had the required connection to or effect on U.S. interstate or import commerce, which I will describe for you shortly.

If you find that each of these elements has been proved beyond a reasonable doubt as to a defendant in this case, then you should find that defendant guilty.

If, on the other hand, you find that any of these elements has not been proved beyond a reasonable doubt for a defendant in this case, then you should find that defendant not guilty.[49]

---

[49] 15 U.S.C. §6a; ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases 3-C (2009).

***Defense Objection***:  Defendants object to the Government's proposed instruction and in the alternative propose the instruction on the following page.  The parties' primary area of disagreement is the third element of the Sherman Act.  The Government's formulation of the third element uses language from the FTAIA relating to U.S. "interstate or import commerce" that is most often used in traditional cases involving U.S. domestic conduct.  By contrast, Defendants request that the Court use the standard articulated by the Supreme Court for the extraterritorial reach of the Sherman Act to foreign conduct – namely, that it "was meant to produce and did in fact produce some substantial effect on the United States."  *Hartford Fire Ins. Co. v. California*, 509 US. 764, 796 (1993); *see also United States v. Nippon Paper Indus. Co., Ltd*..  62 F. Supp. 2d 173, 196 (D. Mass. 1999) (stating that the third element of a foreign conduct case was whether there were "intended and substantial effects on United States commerce").  *Hartford Fire* was decided by the Supreme Court 11 years after the passage of the FTAIA in 1982, involved the conduct of London-based reinsurers, and provides the proper instruction for Sherman Act cases involving foreign conduct.

Furthermore, the Government's citations in this instruction are misleading.  The third element the Government proposes is <u>not</u> in the ABA Model Criminal Instructions at 3-C.  As stated in *Nippon Paper*, another case involving foreign conduct, the third element should employ the "intended and substantial effects on United States commerce" standard that was articulated by the Supreme Court in *Hartford Fire*.

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.19

## <u>THE CLAIM AND THE ELEMENTS</u>

The Indictment charges the Defendants with an illegal agreement to restrain trade in violation of the Sherman Act.  In order for one or more of the Defendants to be guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

*First*, the existence of an illegal agreement knowingly formed beginning on or about December 2007 and continuing through January 2013 to suppress and eliminate competition for the purchase and sale of EUR/USD in the United States and elsewhere by fixing, stabilizing, maintaining, increasing, and decreasing the price of EUR/USD in the FX interbank market;

*Second*, that the Defendants knowingly—that is, voluntarily and intentionally—became members of that charged illegal agreement, knowing its unlawful goal and intending to help accomplish it;[50]

*Third*, the government must prove that the charged illegal agreement satisfies two criteria.  The charged illegal agreement must have had a substantial effect in the United States. Each Defendant must have intended the charged agreement to have had a substantial effect in the United States.[51]

---

[50] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 3-C (2009).

[51] *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 (1993) ("[I]t is well established by now that the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States.").

***Government Objection***:  The defense's proposed instruction on the third element of the Sherman Act is a mischaracterization of the law. The third element of the Sherman Act requires that the Government prove beyond a reasonable doubt that either interstate or import commerce was affected by the charged conspiracy. If the jury does not find interstate or import commerce, then alternatively, under the Foreign Trade Antitrust Improvement Act, the jury must find that the conspiracy had a direct, substantial, and reasonably foreseeable effect on U.S. commerce. The defense's proposed third element does not include interstate commerce, import commerce, or the FTAIA standard. Instead, the defense suggests that the "substantial and intended" test established under *Hartford Fire* should replace the third element of the Sherman Act. This is incorrect as a matter of law. The jury should find separately for the *Hartford Fire* standard, as described in the Government's proposed instruction at 3.27, but that standard is not a substitute for the third element of the Sherman Act. Further, the conspiracy *itself* must have a substantial effect in the United States. It is incorrect as a matter of law that each individual defendant must have intended a substantial effect in the United States. Lastly, the Government is prosecuting a *conspiracy*. It is not appropriate for Defendants to change the basis of the Government's charge to an "illegal agreement."

**GOVERNMENT PROPOSED FINAL INSTRUCTION NO. 3.20**

**SHERMAN ACT FIRST ELEMENT: EXISTENCE OF A CONSPIRACY**

The type of relationship condemned by the Sherman Act as a conspiracy is often described as a "partnership in crime," in which each person found to be a member of the conspiracy is liable for all acts and statements of the other members made during the existence of and in furtherance of the conspiracy. To create such a relationship, two or more persons must enter into an agreement or mutual understanding that they will act together for some unlawful purpose or to achieve a lawful purpose by unlawful means. It is the agreement to act together that constitutes the crime.

In order to establish the existence of a conspiracy, the evidence need not show that the members of the conspiracy entered into any express, formal, or written agreement; that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which the object was to be accomplished. The agreement itself may have been entirely unspoken. What the evidence must show in order to prove that a conspiracy existed is that the alleged members of the conspiracy in some way came to an agreement or mutual understanding to accomplish a common purpose.

Direct proof of a conspiracy may not be available. A conspiracy may, however, be disclosed by the circumstances or by the acts of the members. Therefore, you may infer the existence of a conspiracy from what you find the parties actually did, as well as from the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interest, does not necessarily establish the existence of a conspiracy. If actions

were taken independently by them, solely as a matter of individual business judgment, without any agreement or mutual understanding among them, then there would be no conspiracy.

A conspiracy may vary in its membership from time to time. It may be formed without all parties coming to an agreement at the same time, knowing all the details of the agreement, or knowing who all the other members are. It is not essential that all members acted exactly alike or agreed to play any particular part in carrying out the agreement. The unlawful agreement may be shown if the proof establishes that the parties knowingly worked together to accomplish a common purpose.

In determining whether a conspiracy has been proved, you must view the evidence as a whole and not piecemeal. You should consider the actions and statements of all the alleged conspirators. The conspiracy may be inferred from all the circumstances and the actions and statements of the participants. Acts that are by themselves wholly innocent acts may be part of the sum of the acts that make up a conspiracy to restrain trade in violation of the Sherman Act.

The evidence does not have to establish that the defendants agreed to all the means or methods set forth in the Indictment or that such means and methods were actually used. Nor does the evidence have to show that all the persons alleged to have been members of the conspiracy actually were members. What the evidence must show is that the conspiracy charged existed at or about the time states in the Indictment, and that the defendants knowingly became members of the conspiracy.

A conspiracy ends only when its purposes and objectives have been accomplished or all parties to the conspiracy abandon or terminate it.[52]

---

[52] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 3-D (2009).

**_Defense Objection_**: Defendants object to the Government's proposed "conspiracy" instruction and propose their much simpler alternative instruction on the following page.

The Government's proposed instruction is too long and difficult to understand.  It discusses concepts that are not relevant to finding the existence of a conspiracy, such as the language that members of a conspiracy are liable for the acts of other members (*i.e.*, a *Pinkerton* instruction).  There is no need for a *Pinkerton* instruction where the Indictment charges only a Title 15 conspiracy.  The Government's proposal also mentions the attribution of co-conspirator statements to other co-conspirators, even though the Government also submitted a separate (unnecessarily long) instruction solely on that topic.  The Government's proposal is also unbalanced, because it recites in great detail all the things the Government does not need to prove to establish a conspiracy, with almost no mention of what the Government *does* need to prove.

The Defendants' alternative instruction covers all the essential points of law in easier-to-understand language that is based on instructions courts have given in other criminal antitrust cases and Supreme Court case law.

**DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.20**

**SHERMAN ACT FIRST ELEMENT: ILLEGAL AGREEMENT**

The first element you must find is the existence of the charged illegal agreement.  To prove an illegal agreement, the government must prove that two or more persons agreed with each other to accomplish an unlawful purpose.  In this case, the alleged unlawful purpose was to suppress and eliminate competition by fixing the price of EUR/USD in the FX interbank market.

Proof that people simply communicated about common interests, or engaged in similar conduct, is not enough to establish a criminal agreement.  Rather, the government must prove, beyond a reasonable doubt, that the members of the alleged agreement had a meeting of the minds – that they made a conscious commitment to a common scheme to fix prices.  This is essential.[53]

> ***Government Objection***:  The defense's proposed instruction does not define what an illegal agreement or a conspiracy is for the jury. The Government proposes the ABA Model Jury Instruction in Criminal Antitrust Cases on the existence of a conspiracy and notes that this Court has instructed on the definition of a conspiracy in *Atilla* where the defendant was charged with conspiracies to defraud the United States, to violate the International Emergency Economic Powers Act, to commit bank fraud, and to commit money laundering. Further, the Government is prosecuting a *conspiracy*. It is not appropriate for Defendants to change the basis of the Government's charge to an "illegal agreement."

_____

[53] *United States v. Taubman*, Final Jury Instructions, 01-cr-429 (GBD) (S.D.N.Y. Dec. 4, 2001), at 2112 ("A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose."); *United States v. Tokai Kogyo Co.*, Jury Instructions, 16-cr-63 (TSB), Dkt. 235 (S.D. Ohio Nov. 6, 2017), at 20 ("[P]roof that people simply met together from time to time and talked about common interests, or engaged in similar conduct, is not enough to establish a criminal agreement. . . . What the government must prove is that there was a mutual understanding . . . to allocate sales, rig bids, and fix prices.  This is essential."); *see Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764 (1984) (stating that an antitrust claim requires proof "that the [defendant] and others had a conscious commitment to a common scheme designed to achieve an unlawful objective"); *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946) (stating that an antitrust claim requires proof of a "unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement").

**DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.21**

**PROOF OF THE CHARGED ILLEGAL AGREEMENT**

The Indictment alleges that the Defendants were members of a single, overall illegal agreement that began at least as early as December 2007 and continued at least through January 2013.  The Indictment alleges that Mr. Usher and Mr. Ramchandani joined the illegal agreement with [the cooperating witness] in or around December 2007, and that Mr. Ashton joined the agreement in or around December 2011.

You must judge the Defendants only on the illegal agreement alleged in the Indictment. The Defendants are entitled to rely upon the Indictment as a fair statement of the offense charged, and it would be fundamentally unfair and a violation of their constitutional rights to convict them of anything but the offense charged.

If you find that the single, overall illegal agreement charged in the Indictment did not exist, you cannot find any Defendant guilty.  This is so even if you find that some other

agreement existed, and even if that other agreement had a purpose and/or membership similar to

the agreement alleged in the Indictment.[54]

---

[54] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 4-B-7 (2009); *United States v. Mrs. Baird's Bakeries Inc. et al.*, Tr. of Trial Proceedings, No. 95-CR-294-R (N.D. Tex. Feb. 9, 1996), at IV-634-35 ("You should first determine whether the evidence established the existence of the single, overall conspiracy alleged in Count One or Count Two. . . . If you find that the alleged conspiracy did not exist, then you must acquit the defendants on charges in Count One or Count Two, even though you may find that some other conspiracy existed."); ABA, *Model Jury Instructions in Criminal Antitrust Cases 1976-1980 (1982)*, at 77 (from *United States v. Rockwell Int'l, et al.*) ("The defendant is entitled to rely upon the indictment as a fair statement of the offense charged in this case, and it would be fundamentally unfair and a violation of [the defendant's] constitutional rights to convict it of anything but the offense charged.  The indictment in this case charges the defendant with engaging with others in a single continuing agreement to fix prices beginning in 1973, and continuing thereafter until November 1977.  Therefore, the government must prove beyond a reasonable doubt that there was but one single continuing price fixing agreement in which the defendant participated at one point or another. . .  Therefore, if you find that there were two or more separate agreements among different companies or at different times rather than a single continuing agreement to fix prices charged by the government, then you must find the defendant not guilty."); *id.* at 74-75 (from *United States v. Rheem Manufacturing Co. et al.*) ("It may not be a series of separate independent conspiracies.  It must be [the] overall conspiracy alleged in the indictment.  Now, there are dates given in the indictment, 1963 to 1977 . . . [If the government proved] only that something occurred in 1975, or '76 or '77 . . . and there was no overall conspiracy as alleged from 1963 onward, you cannot convict the defendants because the government would have failed to prove the conspiracy alleged in the indictment."); Sand, *Modern Federal Jury Instructions*, Instr. 58-4 ("If you find that the conspiracy charged in the indictment did not exist, you cannot find any defendant guilty . . . .  This is so even if you find that some conspiracy other than the one charged in the indictment existed; and even though any other conspiracy you may find existed had a purpose and/or membership similar to the conspiracy charged in the indictment.").

***Government Objection***:  The Government proposes omitting this proposed instruction entirely. It is duplicative of Proposed Instructions No. 3.16 (Summary of Indictment) and 3.19 (Elements of the Sherman Act Offense Charged), which state that the Indictment charges a single agreement in a single count. In addition, the reference to "other agreements" in the last sentence of Defendants' proposed instruction is unnecessarily confusing in a case involving a single agreement in a single count. The middle paragraph of Defendants' proposed instruction is pure argument and does not address anything the jury must decide. Lastly, the Government is prosecuting a *conspiracy*. It is not appropriate for Defendants to change the basis of the Government's charge to an "illegal agreement."

***Defense Comment***:  Second Circuit precedent requires "a multiple conspiracy charge . . . whenever several conspiracies might be inferred from the evidence offered." *United States v. Cambindo Valencia*, 609 F.2d 603, 625 (2d Cir. 1979).  This principle applies here because the Government has chosen to charge the Defendants with a single, continuing conspiracy, but claims that this conspiracy was "opportunistic" in nature.

Having made this choice (thereby eliminating certain statute of limitations defenses that otherwise would have applied to a significant portion of the Government's case), the Government must prove the single, overall conspiracy that it charged.  *See United States v. Curran*, 20 F.3d 560, 572 (3d Cir. 1994) ("The question of whether there was a single or multiple conspiracies is important in this case not only because of a possible variance between the allegations made in the indictment and the proof tendered at trial, but also because of the presence of a possible statute of limitations defense.").

The Supreme Court has clearly stated that separate agreements to fix prices made at different times are not the same as, and cannot substitute for, proof of a single, continuing agreement to fix prices on multiple occasions.  *See United States v. Broce*, 488 U.S. 563, 570-71 (1989) (discussing in antitrust case the existence of "two distinct agreements: the first, an agreement beginning in April 1978 to rig bids on one specific highway project, and the second, an agreement beginning 15 months later to rig bids on a different project"); *see also* U.S. Attorneys' Manual, Antitrust Resource Manual ("In antitrust criminal cases, it is especially important to determine whether a single, continuing conspiracy was in existence involving numerous price changes, bid awards, or markets allocated, or whether certain isolated price changes, bid awards, or markets allocated were the subjects of separate conspiracies.")

The text of the Defendants' proposed instruction comes from similar instructions in other antitrust criminal cases, the ABA Model Criminal Antitrust Jury Instructions, and Sand.

## GOVERNMENT PROPOSED FINAL INSTRUCTION NO. 3.22

## SHERMAN ACT CONSPIRACY SECOND ELEMENT: KNOWINGLY JOINED

The second element the government must prove beyond a reasonable doubt for you to find a defendant guilty is that the defendant knowingly joined the conspiracy charged in the Indictment.  To act "knowingly" means to act voluntarily and intentionally, and not because of a mistake, accident, or other innocent reason.  Therefore, before you may convict the defendant, the evidence must establish that the defendant joined the conspiracy to suppress and eliminate competition for the purchase and sale of the Euro-dollar currency pair with the intent to aid or advance the object or purpose of the conspiracy.

A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all of its members, or the parts they played in the charged conspiracy. Knowledge of the essential nature of the conspiracy is enough.  On the other hand, a person who has no knowledge of a conspiracy but who happens to act in a way which furthers some object or purpose of the conspiracy does not thereby become a member of the conspiracy. Similarly, mere knowledge of a conspiracy without participation in the conspiracy is also insufficient to make a person a member of the conspiracy.

But a person who knowingly joins an existing conspiracy, or participates in part of the conspiracy with knowledge of the overall conspiracy, is just as responsible as if he had been one of the originators of the conspiracy or had participated in every part of it.  Likewise, a person who knowingly directs another to implement the details of the conspiracy is just as responsible as if he participated in every part of it, including its origin.

Your determination whether a defendant knowingly joined the conspiracy must be based solely on the actions of the defendant as established by the evidence.  You should not consider

what others may have said or done to join the conspiracy.  Membership of the defendant in this

conspiracy must be established by evidence of his own conduct – by what he said or did.

If you find that the defendant joined the conspiracy, then the defendant is presumed to

remain a member of the conspiracy and is responsible for all actions taken in furtherance of the

conspiracy until the conspiracy has been completed or abandoned or until the defendant has

withdrawn from the conspiracy.[55]

> ***Defense Objection***: Defendants object to the Government's proposed instruction and propose their alternative instruction on the following page.  Though the two alternative instructions mostly cover the same ground, the Government's proposed instruction is wordy, hard to understand, and unbalanced.  The final paragraph of the instruction also appears to be a *Pinkerton* instruction, which is superfluous and confusing given that the Indictment charges each Defendant only with a Title 15 conspiracy.

---

[55] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 3-K (2009).

**DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.22**

**SHERMAN ACT SECOND ELEMENT: KNOWINGLY JOINED**

If you are convinced that the charged naked, horizontal agreement to fix prices existed, then you should consider whether the government has proved that each Defendant knowingly joined that agreement.

"Knowingly" means the Defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake, or accident. To find that a Defendant acted knowingly, you must find that he knew the unlawful goal of the agreement – i.e., to fix prices – and that he voluntarily and intentionally joined the agreement with the intent to help achieve that goal.[56]

Proof that a Defendant simply knew about the agreement, or was present at certain times, or associated with members of the group, is not enough.[57] Rather, you must find that the Defendant knowingly joined the illegal agreement, and that he actually intended to carry out the illegal agreement in fact.[58]

---

[56] *United States v. Andreas*, Andreas Jury Instructions To Be Given by Court, 96-cr-762 (BMM) (N.D. Ill. Sept. 8, 1998), at 27 ("Knowingly means that the Defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake, or accident. In order to find that the Defendant acted knowingly, you must find that he voluntarily and intentionally became a member of the conspiracy charged in the indictment knowing of its goal and intending to help accomplish it.").

[57] *United States v. Tokai Kogyo Co.*, Jury Instructions, 16-cr-63 (TSB), Dkt. 235 (S.D. Ohio Nov. 6, 2017), at 21 ("[P]roof that a defendant simply knew about a conspiracy, or was present at times, or associated with members of the group, is not enough.").

[58] *United States v. Smigel*, Court's Instructions To The Jury, 00-cr-362 (NFA) (S.D. Tex. Oct. 15, 2001), at 20 ("Thus, the government has to prove beyond a reasonable doubt that the defendant knowingly agreed with a competitor to raise, fix and maintain prices, and that the defendant actually intended to carry out the agreement in fact."); *United States v. Therm-All, Inc.*, 373 F.3d 625, 639 (5th Cir. 2004) (approving instruction stating, "[t]he Government has to prove beyond reasonable doubt that the Defendant knowingly agreed with a competitor to raise, fix and maintain prices, and that the Defendant actually intended to carry out the agreement in fact"); *see United States v. Andreas*, 216 F.3d 645, 669 (7th Cir. 2000) (stating that "a defendant who pretended to agree but did not intend to honor the agreement could not be convicted of a crime").

Your determination whether a Defendant knowingly joined the illegal agreement must be based solely on the actions of that Defendant as established by the evidence—by what he said and did.  You should not consider what others may have said or done to join the agreement.[59]

> ***Government Objection***:  Defendants' proposed instruction does not address several important points that are standard in Section 1 criminal cases, and included in the Government's proposal: (i) knowledge of the essential purpose of the conspiracy is sufficient, (ii) it does not matter whether Defendants joined the conspiracy at different times (an issue relevant to this case), and (iii) a member of the conspiracy is a member until the conspiracy has ended.
>
> Additionally, the last sentence of Defendants' proposed instruction, "You should not consider what others may have said or done to join the agreement" is misleading and overbroad. What others may have said or done to join the agreement could include what the Defendants said or did, or at least inform it.

---

[59] *United States v. Taubman*, Final Jury Instructions, 01-cr-429 (GBD) (S.D.N.Y. Dec. 4, 2001), at 2117-18 ("Your determination whether the defendant knowingly and intentionally joined the conspiracy must be based solely on the actions of the defendant.  You should not consider what others may have said or done.  Membership of the defendant in this conspiracy must be established by evidence of his own conduct—what he said or did.").

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.23

### INTENT TO AGREE

A Defendant who did not intend to agree to an illegal agreement cannot be convicted of a crime. Merely bluffing, pretending to agree, or saying things that you do not mean to be taken literally – without intending to agree – is not unlawful.[60]

---

**_Government Objection_**: The Government proposes omitting this proposed instruction entirely. This is neither a standard instruction nor a correct characterization of the "knowingly joined" element of the Sherman Act. The Government's Proposed Final Instruction 3.22 sufficiently sets forth the standard of proof regarding whether defendants knowingly joined the charged conspiracy, making this proposal unnecessary.

**_Defense Comment_**: The Defendants propose their "intent to agree" instruction based on the circuit court opinions in _United States v. Andreas_, 216 F.3d 645 (7th Cir. 2000), and _United States v. Therm-All, Inc._, 373 F.3d 625, 639 (5th Cir. 2004), and the district court's jury charge in _United States v. Smigel_, No. 00-cr-362 (NFA) (S.D. Tex. Oct. 15, 2001).

The Government's proposed "knowingly joined" instruction does not capture the important proposition reflected here, namely, that a Defendant who makes statements indicative of agreement without intending to agree lacks the criminal _mens rea_ necessary for conviction.

Because this case involves years of informal communications in a chatroom, where the Defendants may have made statements not to be taken literally, an "intent to agree" instruction is critical to the defense.

---

[60] _United States v. Andreas_, 216 F.3d 645, 669 (7th Cir. 2000) (stating that "a defendant who pretended to agree but did not intend to honor the agreement could not be convicted of a crime"); _see United States v. Smigel_, Court's Instructions To The Jury, 00-cr-362 (NFA) (S.D. Tex. Oct. 15, 2001), at 20 ("Thus, the government has to prove beyond a reasonable doubt that the defendant knowingly agreed with a competitor to raise, fix and maintain prices, and that the defendant actually intended to carry out the agreement in fact."); _United States v. Therm-All, Inc._, 373 F.3d 625, 639 (5th Cir. 2004) (approving instruction stating, "[t]he Government has to prove beyond reasonable doubt that the Defendant knowingly agreed with a competitor to raise, fix and maintain prices, and that the Defendant actually intended to carry out the agreement in fact").

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.24

## INTENT TO FIX PRICES

To establish the required intent, the government must prove beyond a reasonable doubt that the Defendants knowingly did something that the law forbids.  In this case, that means the government must prove beyond a reasonable doubt that the Defendants knowingly joined the illegal agreement charged in the Indictment with the purpose of fixing the price of EUR/USD.[61] It is not enough to find that the Defendants merely agreed to actions that might have had an effect on prices, unless you also find that unlawfully fixing the price was the Defendants' goal in taking those actions.[62]

---

[61] *United States v. Anderson*, Trial Tr., 01-cr-302 (RBP) (N.D. Ala. Feb. 11-12, 2002), at 1081-82 ("To establish the required intent, the government must prove beyond a reasonable doubt that the defendant knowingly did something which the law forbids.  In this case, that means that the government must prove beyond a reasonable doubt that the defendant Anderson knowingly joined a conspiracy to rig bids."); *United States v. Koppers*, 652 F.2d 290, 298 (2d Cir. 1981) (stating that the government must show "that the defendant intentionally engaged in conduct that is a per se violation of the Sherman Act").

[62] *United States v. Carlos Seafood*, Charge to the Jury, 94-cr-10025 (REK)  (D. Mass. May 3, 1995), at 25, 36 ("What you must find, however, in order to find that the government has met its burden of proving agreement, is that the evidence shows beyond reasonable doubt that the defendants intended to enter into an agreement as charged.  It is not enough for the government to show merely that the conduct of the defendants had an effect on prices at which they sold fish to their customers. . . To find a defendant guilty, you must find beyond reasonable doubt that the defendant (1) intended to join in an agreement with one or more others, and (2) intended to join in the objective of fixing prices to be charged or quoted to third persons as customers."); *see United States v. United States Gypsum Co.*, 438 U.S. 422, 435 (1978) ("We agree with the Court of Appeals that an effect on prices, without more, will not support a criminal conviction under the Sherman Act."); *Wall Products v. Nat'l Gypsum*, 326 F. Supp. 296 (N.D. Cal. 1971) ("From this language it is clear that in *Cement Manufacturers* the Supreme Court held lawful, and not in violation of the Sherman Act, an exchange between sellers of price information relating to specific customers, even under circumstances amounting to an agreement, where the purpose of the exchange was to safeguard against fraud and deception, and even though prices might be affected thereby.").

**_Government Objection_**:  The Government proposes omitting this proposed instruction entirely. The Government's Proposed Final Instruction 3.22 sufficiently and more completely sets forth the standard of proof regarding intent, that is, whether defendants knowingly joined the charged conspiracy. Therefore, this proposal is unnecessary. Furthermore, Defendants' proposal is contrary to the law. In a criminal Section 1 case, general intent is all that is required. No specific intent is required, including specific intent to act "unlawfully" or with specific knowledge of what "the law forbids." *See United States v. Koppers*, 652 F.2d 290, 298 (2d Cir. 1981) (stating that the government must show "that the defendant intentionally engaged in conduct that is a per se violation of the Sherman Act".

**_Defense Comment_**: The Defendants' proposed instruction is based on the instruction the court gave in *United States v. Carlos Seafood*, No. 94-cr-10025 (REK) (D. Mass. May 3, 1995). The instruction explains to the jury that, to convict, it must find that the Defendant acted with a price-fixing purpose, and that a mere price *effect*, without more, is not enough.  The Government's proposed "knowingly joined" instruction ignores this critical distinction.

A defendant can only "intentionally" enter a price-fixing agreement, as required to establish a criminal *mens rea* under *United States v. Koppers*, 652 F.2d 290, 298 (2d Cir. 1981), if he enters the agreement with the purpose or goal of fixing prices.  A price effect alone is insufficient to show a price-fixing purpose, as the Supreme Court and other courts have repeatedly stated.  *See, e.g.*, *United States v. United States Gypsum Co.*, 438 U.S. 422, 435 (1978) ("We agree with the Court of Appeals that an effect on prices, without more, will not support a criminal conviction under the Sherman Act."); *Wall Products v. Nat'l Gypsum*, 326 F. Supp. 296 (N.D. Cal. 1971) (stating that "in *Cement Manufacturers* the Supreme Court held lawful" an exchange of price information between competing sellers "even though prices might be affected thereby").

**DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.25**

**CONSCIOUS COMMITMENT TO COMMON SCHEME**

To prove an illegal agreement, the government must establish that the alleged members of the agreement made a conscious commitment to a common unlawful scheme.  In determining whether the government has met its burden, you should consider whether any alleged agreement was clear and definite enough that the members of the agreement would have understood its unlawful purpose, and could have enforced the terms of the agreement.[63]

---

*Government Objection*:  The Government proposes omitting this proposed instruction entirely. Defendants' proposal is contrary to the law. The Government's Proposed Final Instruction 3.22 sufficiently and accurately sets forth the standard of proof regarding intent, that is, whether defendants knowingly joined the charged conspiracy. *See* ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 3-K (2009). Therefore, this proposal is unnecessary. In addition, the Government is not required to prove that the agreement was "clear and definite," but only that the purpose of the agreement was to unlawfully restrain trade and that Defendants knowingly joined it. Finally, while proof that conspirators took steps to enforce the agreement may be evidence that the agreement existed, it is not a requirement under the law for conviction and should not be unduly emphasized in the manner that Defendants propose.

*Defense Comment*: Defendants' proposed instruction states the standard for a Sherman Act conspiracy that the Supreme Court set forth in *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764 (1984), namely, that the Sherman Act, 15 U.S.C. § 1, requires proof that the Defendants had a "conscious commitment to a common scheme."

If the terms of the alleged conspiracy were not clear or definite enough that the purported members of the agreement could have, or would have, understood the agreement's unlawful purpose, then the government cannot meet its burden of proving criminal intent.  *See United States v. Koppers*, 652 F.2d 290, 298 (2d Cir. 1981) (stating that the government must show "that the defendant *intentionally* engaged in conduct that is a per se violation of the Sherman Act" (emphasis added)).

The Government's proposed "knowingly joined" instruction omits this important concept.

---

[63] *United States v. Andreas*, Jury Instructions, 96-cr-762 (BMM) (N.D. Ill. Sept. 8, 1998), at 27 ("In order to find that the Defendant acted knowingly, you must find that he voluntarily and intentionally became a member of the conspiracy charged in the indictment knowing of its goal and intending to help accomplish it."); *United States v. Tokai Kogyo Co.*, Jury Instructions, 16-cr-63 (TSB), Dkt. 235 (S.D. Ohio Nov. 6, 2017), at 21 ("To convict a defendant, the government must prove that the particular defendant knew the

## GOVERNMENT PROPOSED FINAL INSTRUCTION NO. 3.26

## SHERMAN ACT CONSPIRACY THIRD ELEMENT: COMMERCE

The third element of a Sherman Act offense requires that the charged conspiracy have a connection to or effect on U.S. interstate or import commerce.  That element is satisfied if you find beyond a reasonable doubt one or both of the following:

(1) that the charged conspiracy involved U.S. interstate or U.S. import commerce; or

(2) that the charged conspiracy had a direct, substantial, and reasonably foreseeable

effect on U.S. interstate or U.S. import commerce.

Proof that this element is met as to one defendant or co-conspirator satisfies the element as to every defendant.[64]

Let me explain some of these terms.  Commerce is a broad concept and includes transactions involving buying, selling, and trading of things, including currency, such as dollars and Euros.

"U.S. interstate commerce" includes interstate transactions, that is, transactions that are carried out across state lines or in a continuous flow of commerce moving across state lines.[65] "U.S. import commerce" includes import transactions, that is, transactions that are carried out across the United States' international border where the seller is located outside the United States and the buyer is located in the United States.  A conspiracy involves interstate or import

---

conspiracy's main purpose, and voluntarily joined the conspiracy intending to help advance or achieve its goals."); *see Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764 (1984) (stating that an antitrust claims requires proof "that the [defendant] and others had a conscious commitment to a common scheme designed to achieve an unlawful objective"); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 137 (3d Cir. 1999) (considering the absence of ability to enforce the purported agreement as a factor relevant to showing no illegal agreement existed).

[64] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 3-N (2009).
[65] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 3-N (2009).

commerce if one or more transactions in furtherance of the conspiracy is an interstate or import transaction or is an integral part of an interstate or import transaction.[66]

If the charged conspiracy involved U.S. interstate or import commerce, the third element of the Sherman Act is satisfied and the size of the transaction or commerce involved is of no significance.[67]  The government's proof need not quantify or value any adverse impact of the charged conspiracy or show that the charged conspiracy had any anticompetitive effect.[68]  The amount, quantity, or value of U.S. interstate or U.S. import commerce involved is unimportant.

If the charged conspiracy did not involve U.S. interstate or U.S. import commerce, the government must prove beyond a reasonable doubt that the charged conspiracy had a direct, substantial, and reasonably foreseeable effect on U.S. interstate or import commerce.[69]

An effect is "direct" if it follows in the natural or ordinary course of events from the charged conspiracy.[70]

An effect is "substantial" if it is not insignificant.  There is no minimum monetary requirement for substantiality and the government does not have to quantify or value the effect.[71]

An effect is "reasonably foreseeable" if the charged conspiracy caused an effect that a reasonable person making practical business judgments would have foreseen or been able to predict.[72]

---

[66] *See* 15 U.S.C. § 6a; ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 3-N (2009).

[67] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 3-N (2009).

[68] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 3-N (2009).

[69] 15 U.S.C. § 6a.

[70] *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 411 (2d Cir. 2014) (interpreting the word "direct" in the FTAIA to require only a "reasonably proximate causal nexus").

[71] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 3-N (2009); *Cf. McLain v. Real Estate Bd. Of New Orleans, Inc.* 444 U.S. 232, 243 (1980) ("Nor is jurisdiction defeated in a case relying on anticompetitive effects by plaintiff's failure to quantify the adverse impact on defendant's conduct."); *Goldfarb v. Va. State Bar*, 421 U.S. 773, 785 (1975) ("[O]nce an effect is shown, no specific magnitude need be proved").

***Defense Objection***: Defendants object to the Government's proposed instruction. *Hartford Fire Insurance Co. v. California*, 509 U.S. 764 (1993), provides the correct articulation of the third offense element where, as here, an alleged Sherman Act violation entails foreign conduct. In *Hartford Fire*, the Supreme Court held it to be "well established by now that the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States." *Id.* at 796. The Government's proposed articulation of the third element pertains to domestic conduct and fails to instruct the jury on the dual requirement of intent and effect for cases involving foreign conduct.

Furthermore, the Government's first citation in this instruction is misleading. The two prongs presented by the Government at the outset of the instruction are <u>not</u> in the ABA Criminal Antitrust Model at 3-N. Instruction 3-N in the ABA Criminal Antitrust Model is the "Interstate Commerce" instruction, which is more appropriate for cases involving domestic conduct. That model instruction does not serve as any support for the two prongs the Government requests.

***Government Comment***: Please see the Government's comment above at 3.19 on the third element of the Sherman Act. The third element of the Sherman Act requires that the Government prove beyond a reasonable doubt that either interstate or import commerce was affected by the charged conspiracy. If the jury does not find interstate or import commerce, then alternatively, under the Foreign Trade Antitrust Improvement Act, the jury must find that the conspiracy had a direct, substantial, and reasonably foreseeable effect on U.S. commerce. Instead, the defense suggests that the "substantial and intended" test established under *Hartford Fire* should replace the third element of the Sherman Act. This is incorrect as a matter of law. The jury should find separately for the *Hartford Fire* standard, as described in the Government's proposed instruction at 3.27, but that standard is not a substitute for the third element of the Sherman Act.

---

[72] *See Minn-Chem, Inc. Agrium, Inc.*, 683 F.3d 845, 856 (7th Cir. 2012); *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 471 (3d Cir. 2011).

## GOVERNMENT PROPOSED FINAL INSTRUCTION 3.27

## APPLICATION OF THE SHERMAN ACT

The Sherman Act applies to conspiracies that occurred outside the United States if the conspiracy had a substantial and intended effect on the United States. Thus, to convict the defendants you must find beyond a reasonable doubt that the conspiracy had a substantial and intended effect in the United States.[73] It is not necessary to find that each defendant's actions had a substantial and intended effect in the United States. As I have instructed you, an effect is "substantial" if it is not insignificant. There is no minimum monetary requirement for substantiality and the government does not have to quantify or value the effect.[74]

---

**Defense Objection**: Defendants object to the Government's instruction, which states that it is unnecessary to find that "each defendant's actions had a substantial and intended effect in the United States." Neither *Hartford Fire* nor the ABA Model Jury Instruction in Criminal Antitrust (the sources the Government cites) states that proposition. *Hartford Fire* instead makes clear that "foreign conduct" must have an intended and substantial effect on the United States. 509 U.S. 764, 796 (1993). Of course, the foreign conduct contemplated by *Hartford Fire* can only be that of the Defendants. The Government's instruction suggests otherwise and risks misleading the jury.

---

[73] *United States v. AU Optronics Corp.*, Final Jury Instructions, 09-cr-001100 (SI), Dkt. 829 (N.D. Cal. March 1, 2012); *United States v. Leung*, Final Jury Instructions, 09-cr-001100 (SI), Dkt. 1087 (N.D. Cal. Dec. 18, 2012).
[74] *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 (1993); ABA Section of Antitrust Law, *Model Jury Instruction in Criminal Antitrust* 3-N (2009).

**DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.27**

**SHERMAN ACT THIRD ELEMENT:**
**SUBSTANTIAL AND INTENDED EFFECT IN THE UNITED STATES**

If you are convinced that the charged naked, horizontal agreement to fix prices existed and that each Defendant knowingly joined that agreement, then you must consider whether the illegal agreement satisfies two criteria.

You must find that the charged illegal agreement had a substantial effect in the United States.  You must also find that the charged illegal agreement was intended to have a substantial effect in the United States.[75]

> ***Government Objection***:  Please see the Government's comment above at 3.19 and 3.26. The "substantial and intended" test established under Hartford Fire applies *in addition to* the third prong of the Sherman Act as defined at 3.26, above. Moreover, Defendants' proposed instruction does not define "substantial."

---

[75] *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 (1993) ("[I]t is well established by now that the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States.").

**GOVERNMENT PROPOSED FINAL JURY INSTRUCTION 3.28**

**PRICE FIXING AND BID RIGGING**

The Indictment charges the defendants with conspiring to suppress and eliminate competition for the purchase and sale of the Euro-dollar currency pair by fixing prices and rigging bids. A conspiracy to fix prices is an agreement or mutual understanding between two or more competitors to fix, control, raise, lower, maintain, or stabilize the prices charged, or to be charged, for products or services.

A price-fixing conspiracy is commonly thought of as an agreement to establish the same price; however, prices may be fixed in other ways. Prices are fixed if the range or level of prices is agreed upon by the conspirators. They are fixed because they are agreed upon. Thus, any agreement to raise or lower a price, to set a maximum price, to stabilize prices, to set a price or price range, or to maintain a price is illegal.

One way to fix prices is by rigging bids. A conspiracy to rig bids may be an agreement among competitors about the prices to be bid or offered, who should be the successful bidder, who should make the best bid or offer, or who should refrain from bidding; or any other agreement with respect to bidding that affects, limits, or avoids competition among them.

The aim and result of every price-fixing and bid-rigging conspiracy, if successful, is the elimination of one form of competition.

If you should find that the defendants entered into an agreement to suppress and eliminate competition by fixing prices or rigging bids, the fact that the defendants or their coconspirators did not abide by the agreement, or that one or more of them may not have lived up to some

aspect of the agreement, or that they may not have been successful in achieving their objectives, is no defense. The agreement is the crime, even if it is never carried out.[76]

***Defense Objection***: The Defendants object to the Government's proposed "price fixing and bid rigging" instruction and propose their alternative instruction on the following page.  The Defendants' proposed instruction is legally correct and easy to understand.

The Government's proposed instruction contains at least two legal errors.

First, it includes "bid rigging," even though this case does not involve any bid rigging.  The Government cherry-picked one sentence out of the ABA Model bid-rigging instruction and inserted it into the ABA Model price-fixing instruction with the connecting sentence (from neither Model instruction) that "[o]ne way to fix prices is by rigging bids." It is telling that the Government did not propose the standard ABA Model bid rigging instruction, but instead attempted to graft bid rigging onto the case as a "way" to fix prices.

The part of the ABA Model bid-rigging instruction that the Government omitted states that bid rigging refers to "an agreement between two or more persons to eliminate, reduce, or interfere with competition ***for a job or contract that is to be awarded on the basis of bids***."  The Government's omission underscores the absence of bid rigging in this case because no procurement was alleged.  This case involved no single "job or contract [or product]" for which the Defendants "rigged" their bidding.  *See* U.S. Dep't of Justice, Price Fixing, Bid Rigging, and Market Allocation Schemes: What They Are and What to Look For (June 25, 2015), https://www.justice.gov/atr/price-fixing-bid-rigging-and-market-allocation-schemes ("Bid rigging is the way that conspiring competitors effectively raise prices where purchasers—often federal, state, or local governments—acquire goods or services by soliciting competing bids.").

Second, the last paragraph of the Government's instruction is misleading and incorrect because it states that the jury can convict even if the alleged agreement was never carried out.  This case involves foreign conduct by foreign nationals (based in London) and is therefore governed by the Supreme Court's decision in *Hartford Fire*.  If the agreement was never carried out, then it could not have had an actual "substantial effect" in the United States and the jury must acquit the Defendants.

---

[76] ABA Section of Antitrust Law, *Model Criminal Antitrust Jury Instructions* 3-F, 3-G (2009).

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.28

## PRICE FIXING

The Indictment claims that the Defendants entered into a single, overall illegal agreement to fix prices.

A price-fixing agreement is an agreement between two or more competitors to fix, control, raise, lower, maintain, or stabilize the prices charged, or to be charged, for products or services.  A "classic" price-fixing agreement is one in which two or more sellers agree on the price they will charge to buyers.[77]

---

***Government Objection***:  It is standard in Sherman Act cases to provide the jurors with a definition of price-fixing and bid-rigging when those have been charged, as they have been in this case. The Government's proposal is verbatim from the ABA Model, and it fairly and more completely defines those terms. Defendants' counterproposal regarding "classic" price-fixing is argumentative and confusing; the jury need not find that Defendants engaged in "classic" price-fixing to convict. In addition, Defendants' suggestion that bid-rigging should be omitted from these jury instructions is inappropriate, when Defendants have in fact been charged with bid-rigging.

---

[77] *United States v. Tokai Kogyo Co.*, Jury Instructions, 16-cr-63 (TSB), Dkt. 235 (S.D. Ohio Nov. 6, 2017), at 26 ("A conspiracy to fix prices is an agreement or mutual understanding between two or more competitors to fix, control, raise, lower, maintain, or stabilize the prices charged, or to be charged, for products or services. A price-fixing conspiracy is commonly thought of as an agreement to establish the same price; however, prices may be fixed in other ways."); *see* ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 3-F; *In re Blue Cross Blue Shield Antitrust Litig.*, 2018 U.S. Dist. LEXIS 58107, at *76-77 (N.D. Ala. Apr. 5, 2018) ("Here, Provider Plaintiffs do not present a classic price fixing scheme in which the competitors preset prices for purchasing goods between themselves.").

## GOVERNMENT PROPOSED JURY INSTRUCTION NO. 3.29

### IGNORANCE OF ANTITRUST LAWS/GOOD FAITH NO DEFENSE

It is not necessary for the Government to prove that the defendants knew that an agreement, combination, or conspiracy to suppress and eliminate competition, as charged in the Indictment, is a violation of the law.  Thus if you find beyond a reasonable doubt from the evidence in the case that the defendant knowingly joined the conspiracy as charged in the Indictment, then the fact that the defendant believed in good faith that what was being done was not unlawful is not a defense.[78]

> ***Defense Objection***:  Defendants object to the Government's proposed instruction as unnecessary because it is based entirely on the Government's speculation that Defendants will introduce evidence of their ignorance of the law.  Defendants request that consideration of this instruction be deferred to the close of trial to determine whether it is necessary.
>
> ***Government Comment***:  This is a standard instruction in Section 1 criminal cases in order to clarify the standard of intent for the benefit of the jurors, and is verbatim from the ABA Model. Inclusion of this instruction is especially important when, as here, Defendants have suggested that they intend to offer evidence and arguments at trial (if not precluded by the Court) regarding their good faith and lack of specific intent to violate the law.

---

[78] ABA Section of Antitrust Law, *Model Criminal Antitrust Jury Instructions* 3-L (2009).

## GOVERNMENT PROPOSED FINAL INSTRUCTION NO. 3.30

## *PER SE* VIOLATIONS OF THE SHERMAN ACT

The Sherman Act makes unlawful certain agreements that, because of their harmful effect on competition and lack of any redeeming virtue, are conclusively presumed to be an unreasonable restraint of trade and are always illegal, without inquiry about the precise harm they have caused or the business excuse for their use. Included in this category of unlawful agreements are agreements to fix prices and rig bids.

Therefore, if you find that the government has met its burden with respect to each of the elements of the charged offense, you need not be concerned with whether the agreement was reasonable or unreasonable, the justifications for the agreement, or the harm, if any, done by it. It is not a defense that the parties may have acted with good motives, or may have thought what they were doing was legal, or that the conspiracy may have had some good results. If there was, in fact, a conspiracy as charged in the Indictment, it was illegal.[79]

---

**_Defense Objection_**: Defendants object to the Government's proposed "*per se* violations" instruction and proposed their alternative instruction on the following page.

The Government's proposal improperly assumes that the jury has already found that the Government proved the necessary predicates for a *per se* violation (*i.e.*, that the alleged illegal agreement was "naked" and "horizontal") without ever instructing the jury on the law for determining a "naked" or "horizontal" agreement.  *See White Motor Co. v. United States*, 372 U.S. 253, 263 (1963) (discussing "naked restraints of trade with no purpose except stifling of competition"); *Todd v. Exxon Corp.*, 275 F.3d 191, 201 (2d Cir. 2001) (describing a "horizontal conspiracy" as typically "an agreement among sellers," and occasionally, an agreement among competing buyers).

The Defendants' proposal instructs the jury on the well-established case law definitions for the necessary predicates of a *per se* violation *before* explaining to the jury that *per se* violations are considered plainly anticompetitive and lacking in any redeeming virtue.

---

[79] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 3-E (2009).

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.30

## *PER SE* VIOLATIONS OF THE SHERMAN ACT

The government claims that the Defendants violated the Sherman Act by entering into a particular type of illegal agreement: a naked, horizontal agreement to fix prices.

A naked agreement is one that has no purpose beyond reducing competition.[80]

A horizontal agreement is an agreement between competing sellers, or between competing buyers.[81]

Naked, horizontal price-fixing agreements are considered plainly anticompetitive and lacking in any redeeming virtue.  Thus, if you find that the government has proved the existence of a naked, horizontal price-fixing agreement, then it was an illegal agreement.[82]

---

*Government Objection*:  The Government's proposed language correctly defines a per se illegal restraint of trade pursuant to the Sherman Act, 15 U.S.C. § 1. Inclusion of this instruction is especially important when, as here, Defendants have declared their intent to offer justifications and excuses for the charged conduct at trial (if not precluded by the Court), including that the charged conduct had procompetitive benefits and beneficial results. Defendants' proposed language (below) strongly implies to the jurors that *they* are to determine whether the charged conspiracy, if proven, qualifies as a per se offense. This Court has already conclusively determined that it does, as a matter of law. *See* Doc. No. 95, 6–8.

---

[80] *See White Motor Co. v. United States*, 372 U.S. 253, 263 (1963) (discussing "naked restraints of trade with no purpose except stifling of competition"); *Polk Bros., Inc. v. Forest City Enters., Inc.*, 776 F.2d 185, 189 (7th Cir. 1985) ("If two people meet one day and decide not to compete, the restraint is 'naked'; it does nothing but suppress competition.").

[81] *See Todd v. Exxon Corp.*, 275 F.3d 191, 201 (2d Cir. 2001) (describing a "horizontal conspiracy" as typically "an agreement among sellers," and occasionally, an agreement among competing buyers); *Madison 92nd St. Assocs., LLC v. Courtyard Mgmt. Corp.*, 624 F. App'x 23, 28 (2d Cir. 2015) (describing a "horizontal agreement" as one "between competitors").

[82] *United States v. Andreas*, Jury Instructions, 96-cr-762 (BMM) (N.D. Ill. Sept. 8, 1998), at 18-19 ("The Sherman Act makes unlawful certain agreements that, because of their harmful effect on competition, are conclusively presumed to be an unreasonable restraint on trade and are per se illegal . . . [I]f you find that the conspiracy charged in the Indictment existed beyond a reasonable doubt, it was illegal."); *see Hertz Corp. v. City of N.Y.*, 1 F.3d 121, 129 (2d Cir. 1993) (noting that per se treatment applies "in the relatively narrow circumstance where courts have sufficient experience with the activity to recognize that it is plainly anticompetitive and lacks any redeeming virtue").

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.31

## <u>VERTICAL AGREEMENTS</u>

If you find that the government has proven the existence of an agreement to fix prices, then you should consider whether it was a horizontal or vertical agreement.

A horizontal agreement is an agreement among two or more competing sellers.  For example, if two or more car sellers agree on a price to charge to car buyers, then that is a horizontal agreement.

A vertical agreement is an agreement between buyers and sellers.  An example of a vertical agreement is when one person sells a car to a buyer.[83]

Even people who are sometimes competitors are vertical when they engage in buy/sell transactions.  For example, if Chrysler has a surplus of tires in its warehouse, it may sell some of them to Ford.  Although Chrysler and Ford compete in the sale of cars, this particular transaction is actually vertical, in the sense that Chrysler is acting as a supplier to Ford by selling tires to Ford.[84]  The government claims that the Defendants entered into a naked, horizontal agreement to fix prices, and it bears the burden of proving that charge.  Thus, if you find that the government has proved an agreement that was not horizontal—whether because it was a vertical

---

[83] *Todd v. Exxon Corp.*, 275 F.3d 191, 201 (2d Cir. 2001) (Sotomayor, J.) (describing a "horizontal conspiracy" as typically "an agreement among sellers"); *United States v. Am. Express Co.*, 838 F.3d 179, 195 (2d Cir. 2016), *cert granted and aff'd sub nom. Ohio v. Am. Express Co*., 138 S. Ct. 355 (2017) ("[A]ll parties and the District Court agree that Amex's NDPs are a vertical restraint, meaning that they result from agreements setting terms between buyers and sellers."); *Madison 92nd St. Assocs., LLC v. Courtyard Mgmt. Corp.*, 624 F. App'x 23, 28 (2d Cir. 2015) (contrasting "a vertical agreement between buyers and sellers" with "a horizontal agreement between competitors").

[84] Phillip E. Areeda & Herbert J. Hovenkamp, *Fundamentals of Antitrust Law* § 19.02 (4th ed. 2017) ("Chrysler, with a surplus of tires in its warehouse, might sell some of them to Ford.  Although Chrysler and Ford are rivals in the sale of automobiles . . . this particular transaction is actually vertical, in the sense that Chrysler is acting as a supplier of an input into the production of Ford automobiles.").

agreement, or because it was an agreement with both vertical and horizontal elements—then you must acquit the Defendants.[85]

---

***Government Objection***:  The Government proposes omitting this proposed instruction entirely. The Government's Proposed Instruction 3.28 properly informs the jury that price-fixing and bid-rigging agreements are per se illegal when made between *competitors*. If proven beyond a reasonable doubt, this is sufficient to establish a per se illegal conspiracy, as this Court has already ruled. *See* Doc. No. 95, 6–8. Defendants' statement that an agreement is not horizontal if it "was an agreement with both vertical and horizontal elements" is incorrect as a matter of law. It would be error to accept Defendants' misstatement of the law that the jury must acquit if vertical transactions exist between Defendants.

***Defense Comment***:  Defendants' proposed instruction provides well-established case law definitions for "horizontal" and "vertical" so that the jury can understand the legal framework for determining whether the Government has proved the horizontal conspiracy it claims to have charged.

In most cases alleging a *per se* price-fixing violation, the horizontal nature of the charged conspiracy is not a disputed fact (*e.g.*, the case concerns sellers who allegedly conspired to raise prices for their common base of customers).  However, where the issue is disputed, as is the case here, the allegedly "horizontal" nature of the conspiracy is a triable issue of fact.  *See In re Sulfuric Acid*, 743 F. Supp. 2d 827, 868 (N.D. Ill. 2010) ("All this is to say whether Noranda and Falconbridge stood in a horizontal, vertical, or hybrid relationship with co-Defendants remains a triable issue of fact."); *see also United States v. Gaudin*, 515 U.S. 506, 509-10 (1995) ("The Constitution gives a criminal defendant the right to demand that a *jury* find him guilty of all the elements of the crime with which he is charged." (emphasis added)).

---

[85] *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 907 (2007) ("Vertical price restraints are to be judged according to the rule of reason."); *Gatt Commc'n's, Inc. v. PMC Assocs., LLC*, 2011 U.S. Dist. LEXIS 29072, at *22 (S.D.N.Y. Mar. 10, 2011) ("[B]ecause . . . the parties to the alleged agreement have a relationship with both horizontal and vertical elements, Plaintiff's Sherman Act claim must be evaluated under the rule of reason."); *see Beyer Farms, Inc. v. Elmhurst Dairy, Inc.*, 35 F. App'x 29, 29 (2d Cir. 2002) (unpublished) ("Beyer alleged in its complaint that Elmhurst and Bartlett were engaged in a dual-distributorship relationship, or both a vertical and horizontal relationship.  Had Beyer alleged a purely horizontal relationship between Elmhurst and Bartlett, Beyer would have alleged a per se violation of § 1 of the Sherman Act.  Because Beyer did not so plead, its complaint was subject to scrutiny under the 'rule of reason.'"); *In re Sulfuric Acid*, 743 F. Supp. 2d at 868 (discussing "horizontal-vertical hybrid[]" agreements that are not per se illegal because of their potential for procompetitive effects).

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.32

## <u>THE SHERMAN ACT MAKES ILLEGAL ONLY A NARROW SUBCLASS OF AGREEMENTS</u>

Business people routinely enter into many kinds of contracts, agreements, and transactions.  These are a normal part of business and are necessary to enabling competitive markets to function effectively.[86]

The Sherman Act does not prohibit all agreements.  Rather, the Sherman Act prohibits only one class of agreements: those that harm competition and are an unreasonable restraint on trade.[87]

---

[86] *Nat'l Soc'y of Prof. Engineers v. United States*, 435 U.S. 679, 688 (1978) (stating that the Sherman Act obviously does not "outlaw the entire body of private contract law" and noting the importance of contract law in "establish[ing] the enforceability of commercial agreements and enabl[ing] competitive markets—indeed, a competitive economy—to function effectively").

[87] *United States v. Topco Assocs.*, 405 U.S. 596, 606 (1972) ("Were § 1 to be read in the narrowest possible way, any commercial contract could be deemed to violate it.  The history underlying the formulation of the antitrust laws led this Court to conclude, however, that Congress did not intend to prohibit all contracts, nor even all contracts that might in some insignificant degree or attenuated sense restrain trade or competition."); *Bd. of Trade of Chi. v. United States*, 246 U.S. 231, 238 (1918) ("Every agreement concerning trade, every regulation of trade, restrains.  To bind, to restrain, is of their very essence.  The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition.").

___**Government Objection**___:  The Government proposes omitting this proposed instruction entirely. Defendants' characterization of per se illegal agreements as a "narrow subclass" of commercial agreement is argumentative. The proposed language also strongly implies to the jurors that *they* are to determine whether the charged conspiracy, if proven beyond a reasonable doubt, qualifies as a per se offense. This Court has already conclusively determined that it does, as a matter of law. *See* Doc. No. 95, 6–8. The Government's Proposed Instructions Nos. 3.28 and 3.30 sufficiently and objectively state the standard for finding a per se illegal agreement, rendering this proposal unnecessary. Lastly, the Government is prosecuting a *conspiracy*. It is not appropriate for Defendants to change the basis of the Government's charge to an "illegal agreement."

___**Defense Comment**___: The Defendants' proposed instruction is critical given the unique facts of this case—namely, that the Defendants entered into many buy/sell agreements with each other which are not unlawful.  In most price-fixing cases, the alleged competitors are not transacting with each other and have no occasion to do so.  Thus, the only "agreement" that the jury will hear about is the alleged illegal, conspiratorial agreement.  In this case, by contrast, the jury will hear about many "agreements" among the Defendants that are buy/sell transactions in the interbank market.  These are not the type of *conspiratorial* agreements with which the Sherman Act is concerned.  *See* Gov't Opp'n to Defts. Mot. to Dismiss at 8 n.2 (acknowledging that the Indictment does not allege that the Defendants "fix[ed] any agreed-upon prices for EUR/USD trades between themselves").

Without an instruction to explain the difference between ordinary business agreements and "Sherman Act agreements," the jury is likely to become confused and may be led to convict on an improper basis.

The uncontroversial propositions in the Defendants' proposed instruction come directly from the Supreme Court's antitrust jurisprudence.

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.33

## <u>MARKET MAKING EXPLAINED</u>

As you heard during the trial, Foreign Exchange trading does not occur in a single, physical space.  Unlike many stock markets, there is no single, official exchange that facilitates the trading of one currency for another.  Rather, customers trade directly with banks, brokers, or other dealers who stand ready at all times to buy or sell the major world currencies at the request of customers.[88]  Wherever buyers and sellers meet is a marketplace, whether it occurs in a chatroom, over a voice brokerage line, or on an electronic trading platform.[89]

Banks act as Foreign Exchange "market makers."  By being available to either buy or sell EUR/USD to their customers, the banks effectively create a market for those currencies.  If the market makers did not exist, a customer who wanted to buy a substantial quantity of Euros for Dollars would have to find another business willing to be on the other side of that transaction.  Because of the banks' market-making function, the customer can instead go to a bank and purchase the Euros he needs right away.  The bank takes on the task of sourcing the needed Euros.

To act as a market maker, a bank must have liquidity—that is, a source of currency that is ready to be bought or sold.  One common way that market makers obtain liquidity is from other market makers. Thus, it is common for Foreign Exchange market makers to engage in buy/sell

---

[88] *See United States v. Usher et al.*, Indictment ¶ 3, 17-cr-19 (RMB) (S.D.N.Y. Jan. 10, 2017) ("Unlike in many stock markets, there is no single, official exchange in the FX Spot Market that facilitates the trading of one currency for another.  Instead, the FX Spot Market is an over-the-counter market, meaning that customers trade directly with dealers.  Dealers are financial institutions that stand ready to fill orders to buy or sell the major world currencies upon the request of market participants[.]").

[89] *See Usher et al.,* Indictment ¶ 7 ("The interdealer market is a virtual marketplace in which dealers post prices and trade currencies, most often through electronic platforms hosted by third parties, and also through interdealer brokers.").

transactions with each other on the "interbank" or "interdealer" market.[90]  This type of conduct is

essential to a market maker's role, and it is lawful.

---

***Government Objection***:  The Government proposes omitting this proposed instruction
entirely. The Defendants' proposed language (below) contains facts, not instructions; to the
extent Defendants wish the jurors to consider such facts, they must admit them at trial. In
addition, Defendants' statements below regarding the "common" and "lawful" nature of
"buy/sell [vertical] transactions" in the FX market, aside from being argumentative, are
factually incorrect and rest on a misapprehension of the law.

***Defense Comment***:  The Defendants' proposed instruction provides the jury with some
guidance on the unique role that "market makers" play in FX trading.  The jurors are not
likely to be familiar with the concept of market making, and will need guidance from the
Court on how to assess the relevance of the evidence that the parties will offer relating to this
concept.  The basic economic concepts in the proposed instruction come from the facts the
Government alleged in the Indictment.

---

[90] *See Usher et al.,* Indictment ¶ 7 ("Traders find liquidity—that is, a source of currency that is ready to be
bought or sold—through the interdealer market, also known as the interbank market.").

## DEFENSE PROPOSED FINAL INSTRUCTION 3.34

## THE POSSIBLE PARTIES TO THE ILLEGAL AGREEMENT: CORPORATIONS

A corporation cannot conspire with its own officers or employees.  Nor can a corporation's employees – wherever located – conspire among themselves.  This is because a corporation, its officers, and employees are so closely related that they are deemed to share a common purpose and are considered by the law to be one actor.  And as I will explain, a single actor cannot violate this part of the Sherman Act.[91]

---

*Government Objection*:  The Government proposes omitting this proposed instruction entirely as irrelevant and potentially confusing. In May 2015, Defendant's former employer banks pled guilty for their participation in the conspiracy, and the Government gave notice to Defendants early in the case that each of those banks were alleged co-conspirators. Whereas each Defendant cannot conspire solely with his own employer, he can conspire with the other individual Defendants, the individual co-conspirator, and their employers. Because no Defendant has been charged with conspiring solely with his own employer, there is no need for this instruction. Lastly, the Government is prosecuting a conspiracy. It is not appropriate for Defendants to change the basis of the Government's charge to an "illegal agreement."

*Defense Comment*:  Defendants propose this instruction to make clear that no trader can be convicted for coordinating with other traders within his own bank.  Because there will be evidence and potential testimony from individuals who worked at the same banks as Defendants, it is critical that the jury receive this instruction to avoid confusion and ensure that the jury understands that any such coordination would not be unlawful under binding Supreme Court precedent.  *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).

---

[91] *United States v. Taubman*, Final Jury Instructions, 01-cr-429 (GBD) (S.D.N.Y. Dec. 4, 2001); *United States v. Stora Enso North America Corp.*, Final Jury Instructions, 06-cr-323 (D. Conn. July 19, 2007); Sand, *Modern Federal Jury Instructions*, Instr. 58-8.

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.35

## BUY/SELL AGREEMENTS AMONG COMPETITORS

It is important to remember that price fixing refers only to agreements among competitors to fix the price that they will charge to third parties, not to agreements on the price they charge each other.

If two parties to a buy/sell transaction agree on a price for their buy/sell transaction, that is not price fixing, even if the buyers and sellers are otherwise competitors. Everyday examples would be a buyer and a seller agreeing on the purchase price for a car or home.

An agreement that does no more than set the price of goods or services being transferred between the parties to the agreement is, of course, not illegal. [92]

---

[92] *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, Tr. of Proceedings, MDL No. 1827 (N.D. Cal. Aug. 29, 2013), at 3396 ("It is lawful for buyers of goods or services to discuss and decide on prices of those goods or services with the sellers of the goods or services, even if the buyers and sellers are otherwise competitors."); *United States v. Carlos Seafood*, Charge to the Jury, 94-cr-10025 (REK) (D. Mass. May 3, 1995), at 36 ("An agreement that does no more than fix the price of goods or services being transferred between the parties to the agreement is, of course, not illegal."); *see Sitkin Smelting & Ref. Co. v. FMC Corp.*, 575 F.2d 440, 446 (3d Cir. 1978) ("The price-fixing within the scope of the per se prohibition of § 1, however, is an agreement to fix the price to be charged in transactions with third parties, not between the contracting parties themselves."); *United States v Usher*, United States Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the Indictment,17-cr-19. (S.D.N.Y. Dec. 8, 2017), at 8 n.2 ("It is true, but irrelevant, that parties to a transaction do not 'price-fix' in a Sherman Act sense merely by agreeing upon a price for their private trade.  The Indictment alleges that the Defendants coordinated their trading *in an effort* to fix the *market* price for EUR/USD . . . not to fix any agreed-upon prices for EUR/USD trades between themselves." (first emphasis added)).

**_Government Objection_**:  The Government proposes omitting this proposed instruction entirely. Buy/sell transactions are not inherently lawful because of their vertical nature; indeed, they may constitute acts in furtherance of a horizontal conspiracy in restraint of trade, or provide evidence that such a conspiracy exists. Thus it would be error to instruct the jurors that such transactions are conclusively "not illegal." The Government's Proposed Instructions Nos. 3.28 and 3.30 sufficiently and objectively state the standard for finding a per se illegal agreement, rendering this proposal unnecessary.

**_Defense Comment_**: The Defendants' proposed instruction is consistent with the instructions courts have given in other cases where buy/sell agreements among the purported co-conspirators are at issue.  The Government has acknowledged that buy/sell agreements among competitors are not price fixing "in a Sherman Act sense," but that such agreements will be in evidence at trial.  *See* Gov't Opp'n to Defts. Mot. to Dismiss at 8 n.2 ("It is true, but irrelevant, that parties to a transaction do not 'price-fix' in a Sherman Act sense merely by agreeing upon a price for their private trade.").  The jury should be instructed on this point to avoid confusion.

**GOVERNMENT PROPOSED FINAL INSTRUCTION NO. 3.36**

**<u>EXCHANGES OF INFORMATION</u>**

Evidence has been introduced concerning the exchange of information between the defendants alleged to be coconspirators.  The government claims that such exchanges are part of the evidence establishing that the defendants entered into an agreement or mutual understanding to suppress and eliminate competition, as charged in the Indictment.

It is not inherently unlawful for a person to obtain information from a competitor or even to exchange information with that competitor about prices unless done pursuant to an agreement or mutual understanding between two or more persons to suppress and eliminate competition as charged in the Indictment.  Nevertheless, you may consider such facts and circumstances, along with other evidence, in determining whether there was an agreement or mutual understanding between two or more persons to suppress and eliminate competition as charged in the Indictment.[93]

---

[93] *See United States v. Swanson*, Transcript of Record at 2295-96, 2297, (No. CR-06-0692-PJH) (N.D. Cal. Feb. 22, 2008); ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 3-I (2009).

***Defense Objection***: Defendants object to the Government's proposed instruction on "exchanges of information" and propose their neutral alternative instruction on the following page.

The Government's proposal unfairly encourages the jury to view information exchanges negatively: first, by starting with the Government's contention that the information exchange in this case was evidence of the charged conspiracy, and never presenting any countervailing defense contention; and second, by ending with a second suggestion to the jury that the information exchange was evidence of the charged conspiracy.  Nowhere does the Government's proposal acknowledge that the law recognizes that information exchanges may be beneficial to consumers, and that the Defendants' contention is that the information exchange in this case was of that type.  *See United States v. Citizens & S. Nat'l Bank*, 422 U.S. 86 (1975).

The Defendants' proposed instruction closely follows the instruction that the court gave in *United States v. Andreas*, No. 96-cr-762 (BMM) (N.D. Ill. Sept. 8, 1998), which was quoted with approval in the ABA Model Jury Instruction in Criminal Antitrust Cases.

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.36

## EXCHANGES OF INFORMATION

You have heard evidence about the traders exchanging information about currency prices, quantities, and customer orders and identities.  It is not illegal for competitors for exchange price and business information, even if they do so pursuant to an agreement to exchange information.

The law recognizes that information exchanges may enhance competition and benefit consumers.  Thus, you may not infer the existence of an illegal agreement to fix prices, as charged in the Indictment, solely from the fact that the traders exchanged price and business information with each other.[94]

---

**_Government Objection_**:  The Government's proposal is a full and accurate statement of the law regarding information exchanges, rendering this instruction unnecessary. In addition, Defendants' proposed instruction omits an important point, which is that if information is shared _pursuant to an agreement to suppress and eliminate competition_, it is unlawful. Further, the proposal strongly and improperly implies that exchanging information of any kind among competitors is inherently lawful and beneficial.

---

[94] _United States v. Andreas_, Andreas Jury Instructions To Be Given by Court, 96-cr-762 (BMM) (N.D. Ill. Sept. 8, 1998), at 66 ("Evidence that competitors exchanged information or stated their intentions concerning the prices and quantities of a product which they have sold and produced or the prices and quantities of a product which they intend to sell and produce does not by itself prove that there was a conspiracy [to fix or control prices or allocate volumes], even if the exchange of information was done by agreement. Competitors may have legitimate, lawful reasons to exchange information with each other. Thus, you may not infer the existence of a conspiracy solely from the fact that the competitors exchanged information or merely stated their intentions [to do so]."); Sand, _Modern Federal Jury Instructions_, Inst. 58-12.1 ("The exchange of information about price is not, by itself, illegal. The fact that the defendants exchanged such information does not establish an agreement to fix prices.  There may be other legitimate reasons that would lead competitors to exchange information about prices, and the law recognizes that exchanges of such information may enhance competition and benefit consumers."); _see United States v. Citizens & S. Nat'l Bank_, 422 U.S. 86, 113-14 (1975) ("[The dissemination of price information is not itself a per se violation of the Sherman Act."); _Monsanto Co. v. Spray-Rite Service Corp._, 465 U.S. 752, 763-64 (1984) ("In order to assure an efficient distribution system, manufacturers and distributors constantly must co-ordinate their activities to assure that their product will reach the consumer persuasively and efficiently.").

**DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.37**

**EXCHANGING PRICE INFORMATION TO SAFEGUARD AGAINST
CUSTOMER FRAUD OR DECEPTION**

An exchange between two or more sellers of price information relating to specific

customers, even under circumstances amounting to an agreement, is lawful where the purpose of

the exchange was to safeguard against fraud or deception, and even though prices might be

affected thereby.[95]

---

***Government Objection***:  The Government proposes omitting this proposed instruction
entirely. It would be error to instruct the jurors that such a defense exists to a per se charge
under Section 1 of the Sherman Act. The citations offered by Defendants are in conflict with
clear Second Circuit precedent that no such justification or excuse is available in a per se
case. In *United States v. Apple Inc.*, the court noted that, as a matter of law, defendant Apple
could not excuse its participation in a conspiracy with publishers to fix the price of ebooks to
counteract the so-called "market abuses" by competitor Amazon. 791 F.3d 290, 332 (2015).

***Defense Comment***: The Defendants' proposed instruction is based on the Supreme Court's
holding in *Cement Mfrs. Protective Ass'n v. United State*s, 268 U.S. 588, 604 (1925).  The
Government suggests in its proposed "information exchange" instruction that the Defendants'
information exchange is "part of the evidence" establishing their illegal agreement to fix
prices.  But *Cement Manufacturers* and its progeny make clear that the particular kind of
information exchange described in this instruction (*i.e.*, an exchange of information "to
safeguard against fraud or deception") is *per se* legitimate and thus should *not* be viewed as
suggestive of an illegal agreement.

---

[95] *Wall Products v. Nat'l Gypsum*, 326 F. Supp. 296 (N.D. Cal. 1971) ("From this language it is clear that
in *Cement Manufacturers* the Supreme Court held lawful, and not in violation of the Sherman Act, an
exchange between sellers of price information relating to specific customers, even under circumstances
amounting to an agreement, where the purpose of the exchange was to safeguard against fraud and
deception, and even though prices might be affected thereby."); *Cement Mfrs. Protective Ass'n v. United
States*, 268 U.S. 588, 604 (1925) ("[F]or reasons stated more at length in our opinion in *Maple Flooring
Association v. United States*, we cannot regard the producing and dissemination of information which
tends to prevent the procuring of fraudulent contracts . . . as an unlawful restraint of trade even though
such information be gathered and disseminated by those who are engaged in the trade or business
principally concerned.").

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.38

### INDEPENDENT ACTION

The antitrust laws involved in this case are concerned only with joint actions and agreements among competitors, not with actions taken independently by competitors. The independent actions of a person or business can never constitute a restraint in violation of the Sherman Act.

Thus, a business may choose to charge prices identical to those charged by its competitors and still not violate the Sherman Act. Indeed, a business may adopt identical policies and prices to those of its competitors as long as such actions are the result of an independent business decision and not the result of an agreement among competitors.[96]

Independent action is lawful even if a person acts with the hope of influencing the pricing or conduct of his competitors, so long as the action does not reflect an actual illegal agreement between competitors to fix prices.[97]

_____

[96] *United States v. Taubman*, Final Jury Instructions, 01-cr-429 (GBD) (S.D.N.Y. Dec. 4, 2001), at 2118-19 ("[T]he antitrust laws involved in this case are concerned only with joint actions and agreements among or between competitors, not with actions taken independently by [a] single competitor. The independent actions of a person or business can never constitute a restraint of trade in violation of the Sherman Act. Thus, a business may choose to charge prices identical to those charged by its competitors and still not violate the Sherman Act. Indeed, a business may adopt policies and prices identical to those of its competitors as long as such actions are the result of an independent business decision and not the result of an agreement or understanding among competitors."); *United States v. Swanson*, Final Jury Instructions, 06-cr-0692 (PJH), Dkt. 337 (N.D. Cal. Mar. 10, 2008), at 6; *United States v. Andreas*, Andreas Jury Instructions To Be Given By Court, 96-cr-762 (BMM) (N.D. Ill. Sept. 18, 1998), at No. 11.
[97] *United States v. Smigel*, Court's Instructions To The Jury, 00-cr-362 (NFA) (S.D. Tex. Oct. 15, 2001), at 19 ("It is not unlawful to engage in unilateral conduct, even with the hope of influencing pricing or conduct of competitors, unless that conduct reflects or furthers an actual agreement or mutual understanding among competitors to raise, fix or maintain prices.").

**_Government Comment_**:  The Government proposes omitting this proposed instruction entirely. The Government's Proposed Final Instruction No. 3.20 sufficiently and accurately addresses independent action. In addition, the final sentence of Defendants' proposal is not consistent with Supreme Court and Second Circuit precedent that an agreement in restraint of trade may be unspoken, as long as it exists and is knowingly joined.

**_Defense Comment_**: Independent action and parallel conduct instructions are common in antitrust cases.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) ("The inadequacy of showing parallel conduct or interdependence, without more, mirrors the ambiguity of the behavior: consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market.").  The Defendants' proposed instruction is legally correct and based on instructions that courts have given in other criminal antitrust cases.

The Government's "conspiracy" instruction addresses the possibility of independent action in just a single sentence, in the middle of a lot verbiage about what the Government need *not* prove to establish a conspiracy.  Given that the competing inferences of conspiracy versus independent action will be a central factual dispute that the jury must decide, the sentence about independent action in the Government's "conspiracy" instruction is inadequate and should be more neutral

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.39

## PARALLEL CONDUCT

People responding to common perceptions of the market may sometimes take independent actions that are similar, parallel, or even interdependent. People may develop common perceptions of the market through, for example, sharing information about the market with each other. [98]

Parallel behavior in response to common information is as consistent with permissible competition and independent action as with illegal collusion.  Accordingly, parallel conduct, standing alone, is not sufficient to prove an illegal agreement.[99]

---

[98] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) ("The inadequacy of showing parallel conduct or interdependence, without more, mirrors the ambiguity of the behavior: consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market."); *United States v. Citizens & S. Nat'l Bank*, 422 U.S. 86, 113-14 (1975) ("C&S did regularly notify the 5-percent banks [as part of the correspondent associate programs] . . . of the interest rates and service charges in force at C&S National and its affiliates.  But the dissemination of price information is not itself a per se violation of the Sherman Act. . . . The District Court observed that in fact prices did not often vary significantly among the 5-percent banks or between these banks and C&S National, but the court attributed this to the 'natural deference of the recipient to information from one with greater expertise or better services.' . . . [T]he correspondent associate programs, as such, were permissible under the Sherman Act.  In this unusual light, we cannot hold clearly erroneous the District Court's finding that the lack of significant price competition did not flow from a tacit agreement but instead was an indirect, unintentional . . . result of the sharing of expertise and information which was at the heart of the correspondent associate programs."); *Cement Mfrs. Protective Ass'n v. United States*, 268 U.S. 588, 606 (1925) (holding conduct lawful where government failed to show "any concerted action other than that involved in the gathering and dissemination of pertinent information with respect to the sale and distribution of cement" to prevent buyer fraud and "fail[ed] to show any effect on price and production except such as would naturally flow from the dissemination of that information in the trade and its natural influence on individual action"); *In re Elec. Books Antitrust Litig.*, 859 F. Supp. 2d 671, 681 (S.D.N.Y. 2012) ("Conduct that stems from independent decisions is permissible under [Section 1 of the Sherman Act], as are 'independent responses to common stimuli,' and 'interdependence unaided by an advance understanding among the parties.'  To establish a conspiracy in violation of Section 1, then, proof of joint or concerted action is required." (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.4 (2007)).

[99] *United States v. Smigel*, Court's Instructions To The Jury, 00-cr-362 (NFA) (S.D. Tex. Oct. 15, 2001), at 19 ("Conduct that is as consistent with permissible competition or independent action as with illegal collusion, standing alone, is not sufficient to prove that the defendant joined in the conspiracy."); *see Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540-41 (1954) ("The crucial question is whether respondents' conduct toward petitioner stemmed from independent decision or from an agreement, tacit or express.  To be sure, business behavior is admissible circumstantial evidence from

In determining whether the government has proved an illegal agreement, you should consider whether the different persons adopting similar practices did so because of their own independent judgment as to what was in their own best economic interest.[100]

> **_Government Comment_**:  The Government proposes omitting this proposed instruction entirely. The Government's Proposed Final Instruction No. 3.20 sufficiently and accurately addresses independent action, making this instruction unnecessary. In addition, certain aspects of this proposal, including the idea that actions that are "interdependent" are not subject to the Sherman Act, are vague and argumentative. Whereas some version of this instruction may be appropriate in a civil case based solely on circumstantial evidence of parallel pricing or other behavior, for example (as the case citations show), there is no need for it in a case such as this, in which the Government will offer the jury substantial direct evidence of a conspiracy.
>
> **_Defense Comment_**: Parallel conduct is not a Sherman Act violation.  *See Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540-41 (1954) (holding that "parallel business behavior" is not sufficient to prove a Sherman Act offense).  Where the evidence can support either an inference of parallel, independent conduct or an inference of conspiracy, the jury must be instructed on how to assess these competing inferences.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 588 (1986) ("Respondents in this case . . . must show that the inference of conspiracy is reasonable in light of the competing inferences of independent action[.]").
>
> Independent action and parallel conduct instructions are common in criminal antitrust cases, and defendants are entitled to such instructions where they apply.  The Government's proposed "conspiracy" instruction addresses parallel conduct a single phrase (*i.e.*, "Mere similarity of conduct among various persons" is not enough to establish a conspiracy).  This is plainly insufficient, because it fails to explain to the jury the types of situations in which parallel conduct can naturally arise (*e.g.*, when people with similar economic interests are reacting to common stimuli).  Though these types of situations may be intuitive to jurors, it is proper for the Court to provide the jury with some guidance as to *how* to apply their common sense to the facts before them.
>
> This proposed instruction explains how parallel conduct can arise from pricing information shared in an information exchange, as set forth in *United States v. Citizens & S. Nat'l Bank*, 422 U.S. 86, 113-14 (1975).

which the fact finder may infer agreement.  But this Court has never held that proof of parallel business behavior conclusively establishes agreement or, phrased differently, that such behavior itself constitutes a Sherman Act offense."); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("Respondents in this [civil] case . . . must show that the inference of conspiracy is reasonable in light of the competing inferences of independent action[.]").

[100] Sand, *Modern Federal Jury Instructions*, Inst. 58-8 ("In determining whether to find [an illegal] agreement, you should consider whether the different persons adopting similar practices did so because of their own independent judgment as to what was in their own best economic interest.").

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.40

## PARALLEL CONDUCT – SHARED CUSTOMS AND NORMS

It is a common feature of our daily existence that many actions we take are a result of the customs, norms, or socially expected behaviors of our groups or communities.  An everyday example is an escalator.  When you step on an escalator, people stand on the right, and walk on the left, without necessarily having any agreement to do so.

In determining whether the government has proved an illegal agreement, you may consider whether any parallel behavior may have been the result of shared customs, norms, or expected behaviors.  Merely acting in accordance with customs, norms, or expected behaviors— absent an agreement to do so – does not violate the Sherman Act.[101]

---

[101] *United States v. Smigel*, Court's Instructions To The Jury, 00-cr-362 (NFA) (S.D. Tex. Oct. 15, 2001), at 19 ("Conduct that is as consistent with permissible competition or independent action as with illegal collusion, standing alone, is not sufficient to prove that the defendant joined in the conspiracy."); *see Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540-41 (1954) ("The crucial question is whether respondents' conduct toward petitioner stemmed from independent decision or from an agreement, tacit or express.  To be sure, business behavior is admissible circumstantial evidence from which the fact finder may infer agreement.  But this Court has never held that proof of parallel business behavior conclusively establishes agreement or, phrased differently, that such behavior itself constitutes a Sherman Act offense."); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("Respondents in this [civil] case . . . must show that the inference of conspiracy is reasonable in light of the competing inferences of independent action[.]"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("An essential element of the appellants' case required that they prove that Mercedes conspired with its dealers or engaged in concerted action when the dealers used the Mercedes time guides or followed the operations instructions.  The various manufacturers' documents at issue here tended to render appellants' allegations less probable, because a reasonable inference was that use of the time guides occurred due to independent action motivated by competitive forces *and industry practice*." (emphasis added)).

***Government Objection***:  The Government proposes omitting this proposed instruction entirely. It would be error to instruct the jurors that a "shared customs or norms" defense exists to a per se charge under Section 1 of the Sherman Act. This is simply another version of the "reasonableness" defense that is barred in a per se case, *see supra*. As a court in this district put it simply, "it is no defense to participation in an illegal price fixing conspiracy to suggest that others did it too." *United States v. Apple Inc.,* 952 F. Supp. 2d 638, 699 (S.D.N.Y. 2013). In addition, Defendants' escalator example is contrary to established law. An "agreement" for purposes of the Sherman Act need only be a mutual understanding, which the "stand-right, walk-left" escalator convention is (albeit a legal one). *See* Govt's Proposed Final Instr. No. 3.20, Existence of a Conspiracy.

***Defense Comment***: A defendant cannot be convicted under the Sherman Act for parallel conduct.  *See Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540-41 (1954) (holding that "parallel business behavior" is not sufficient to prove a Sherman Act offense).  Where the evidence could support either an inference of parallel, independent conduct or an inference of conspiracy, the jury must be instructed on how to assess these competing inferences.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("Respondents in this [civil] case . . . must show that the inference of conspiracy is reasonable in light of the competing inferences of independent action[.]").

The Defendants' proposed instruction explains to the jury how to assess whether parallel conduct may have arisen out of shared norms or customs, which is a relevant issue in the case. *See Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("An essential element of the appellants' case required that they prove that Mercedes conspired with its dealers or engaged in concerted action when the dealers used the Mercedes time guides or followed the operations instructions.  The various manufacturers' documents at issue here tended to render appellants' allegations less probable, because a reasonable inference was that use of the time guides occurred due to independent action motivated by competitive forces *and industry practice*." (emphasis added)).

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.41

## ANCILLIARY AGREEMENTS

If you find that the government has proven an agreement to fix prices, then you should consider whether it was a naked agreement, as charged in the Indictment, or whether it was an ancillary agreement.

An ancillary agreement is an agreement that supports a legitimate business collaboration, such as an information exchange. If you find that any agreement the government proved was an ancillary agreement, rather than a naked agreement, you must acquit the Defendants.[102]

---

[102] ABA, *Model Jury Instructions in Civil Antitrust Cases* (2005 ed.), at B-22-B-23 ("If you conclude that there was an agreement. . . you should assess whether that agreement was a naked agreement . . . .  If the alleged pricing agreement was reasonably necessary to achieve the competitive benefits of the business integration, then you should conclude that the pricing agreement was [an ancillary agreement]."); *see Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 20 (1979) (contrasting blanket license agreement that "accompanie[d] the integration of sales, monitoring, and enforcement against unauthorized copyright use" with "naked [restraint] of trade with no purpose except stifling of competition" (quoting *White Motor Co. v. United States*, 372 U.S. 253, 263 (1963)) (internal quotation marks omitted)); *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents*, 468 U.S. 85, 100-01 (1984) (rejecting per se rule where "horizontal restraints on competition are essential if the product is to be available at all"); *Texaco Inc. v. Daugher*, 547 U.S. 1, 11 (2006) (stating that the "ancillary restraints doctrine . . . governs the validity of restrictions imposed by a legitimate business collaboration"); *Polk Bros., Inc. v. Forest City Enters., Inc.*, 776 F.2d 185, 189 (7th Cir. 1985) (stating that an ancillary restraint is one that "may contribute to the success of a cooperative venture that promises greater productivity and output," as opposed to a "naked" restraint that "does nothing but suppress competition"); *Rothery Storage Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 224 (D.C. Cir. 1986) ("To be ancillary, and hence exempt from the per se rule, an agreement eliminating competition must be subordinate and collateral to a separate, legitimate transaction.").

**_Government Objection_**: The Government proposes omitting this proposed instruction entirely. Defendants' proposed language (below) instructs the jurors that *they* are to determine whether the charged conspiracy, if proven, qualifies as a per se offense. This Court has already conclusively determined that the charged conspiracy, if proven beyond a reasonable doubt, is a per se illegal restraint of trade between competitors. *See* Doc. No. 95, 6–8. The jurors will already have been sufficiently instructed that if the Government fails to prove any element of the charge beyond a reasonable doubt, for any reason, then they must acquit; further instruction is unnecessary. *See* Jt Proposed Final Instr. No. 3.8 (Presumption of Innocence and Burden of Proof). Moreover, Defendants' definition of an "ancillary agreement" as any agreement "that supports a legitimate business collaboration, such as an information exchange" is contrary to law in multiple respects. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n. 59 (1940) ("Whatever economic justification particular, price-fixing agreements may be thought to have, the law does not permit an inquiry into their reasonableness").

**_Defense Comment_**: Defendants' proposed instruction correctly describes the well-established definitions for "naked" and "ancillary" agreements in the case law so the jury can determine if the Government has proved the naked conspiracy it claims to have charged.

In many price-fixing cases, the "naked" versus "ancillary" aspect of the alleged conspiracy does not involve any factual dispute (*e.g.*, the defendants do not claim to have been involved in any legitimate business collaboration). In this case, however, where the predicate facts are in dispute, the jury must be properly instructed and charged to decide the issue. *See* ABA, *Model Jury Instructions in Civil Antitrust Cases* (2005 ed.), at B-24 ("The determination as to whether a pricing agreement is naked or ancillary . . . will often be a question of law for determination by the court. However, where the resolution of this issue involves a question of fact, [an ancillary restraint] instruction should be provided.") (note to model "ancillary restraint" instruction)

This principle applies in criminal cases as well as civil cases, as the Antitrust Division itself acknowledged in another recent criminal antitrust case. *See* Brief of DOJ Antitrust Division, *United States v. Kemp & Assoc's, Inc. et al.*, No. 17-4148 (10th Cir. Dec. 21, 2017), at 44-45 ("[T]he indictment charges a naked agreement to 'suppress and eliminate competition by agreeing to allocate customers of Heir Location Services sold in the United States.' . . . If the jury finds instead that the evidence proves something else—e.g., an agreement to engage in a legitimate joint venture to which the assignment of heirs was subordinate and collateral—then the jury must acquit because that is not the conspiracy charged in the indictment."); Reply Brief of DOJ Antitrust Division, *Kemp* (Mar. 2, 2018), at 22-24 ("Any possible ancillary restraints defense should await trial."). *Cf. United States v. Gaudin*, 515 U.S. 506, 509-10 (1995) ("The Constitution gives a criminal defendant the right to demand that a *jury* find him guilty of all the elements of the crime with which he is charged." (emphasis added)).

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.42

## CONDUCT INCONSISTENT WITH AN ILLEGAL AGREEMENT

Conduct inconsistent with the existence of an illegal agreement is evidence that no illegal agreement existed.[103]  In assessing whether the Defendants' conduct was inconsistent with the existence of an illegal agreement, you should consider their trading behavior and corresponding trading data.

---

***Government Objection***:  The Government proposes omitting this proposed instruction entirely as a misleading statement of the law. The jurors are entitled to consider or reject any evidence as they see fit, and draw any conclusions they see fit, and it is improper to instruct them otherwise. Even if the correct Sand instruction is used (*see infra* n100), the instruction is cumulative.

***Defense Comment***: Defendants' proposed instruction is based on Sand, *Modern Federal Jury Instructions*.  It is common in criminal antitrust cases for the Court to give the jury some guidance on relevant factors the jury may permissibly consider and weigh in determining whether the Government has proved the existence of an illegal agreement, as this instruction provides.

---

[103] *See* Sand, *Modern Federal Jury Instructions*, Instr. 58-12 ("Of course, if the defendant never acted in accordance with the agreement, that is evidence you should consider in determining whether the defendant ever joined the charged conspiracy in the first place.").

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.43

## DEFENSE THEORY

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure and *United States v. GAF Corp.*, 928 F.2d 1253, 1262-63 (2d Cir. 1991), Defendants intend to request an instruction on their defense theories of the case based on the evidence that is presented at trial. Defendants reserve the right to submit this proposed instruction at the close of evidence or at any earlier time that the Court reasonably sets as provided in Rule 30.[104]

> ***Government Objection***: The Government reserves the right to object to any instruction added later in time on defense theories.

---

[104] *See* Fed. R. Crim. P. 30 ("Any party may request in writing that the court instruct the jury on the law as specified in the request. The request must be made at the close of the evidence or at any earlier time that the court reasonably sets."); *United States v. GAF Corp.*, 928 F.2d 1253, 1262-63 (2d Cir. 1991) ("This Court has repeatedly recognized a criminal defendant's right to a jury charge which reflects the defense theory. . . Although the trial court is not required to review or marshal the evidence for the jury and has broad discretion to decide which facts, if any, it will mention in its comments to the jury, the discretion of the court is circumscribed by the requirement that the charge be fair to both sides.").

## GOVERNMENT PROPOSED FINAL INSTRUCTION NO. 3.44

### <u>VENUE</u>

In addition to all the foregoing elements that I have talked about relating to the offense, you must consider whether the United States has established venue within the Southern District of New York, which includes, among other places, all of Manhattan.

In this regard, the government need not prove that the crime charged was committed in the Southern District of New York or that the defendants were even physically present here during the crime. There are two ways to satisfy the venue requirement. First, it is sufficient to satisfy the venue requirement if any act in furtherance of the conspiracy charged occurred within the Southern District of New York.[105]

You may also find venue in this district if you find that the offense was begun or committed outside of the United States and any one of the defendants was arrested within the Southern District of New York.[106]

Venue may be satisfied in either of these two ways, but you must unanimously agree on which basis the government has proven to satisfy venue.

I should note on this issue, and this issue alone, the government need not prove venue beyond a reasonable doubt, but only by a mere preponderance of the evidence. A "preponderance of the evidence" means that something is more likely than not.[107]

---

[105] *United States v. Kurniawan*, Final Jury Instruction, 12-cr-376 (RMB), Dkt. 109, 199 (S.D.N.Y. Dec. 17, 2013); *see also United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171, 96 (S.D.N.Y. Oct. 13, 2017); *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67, 84 (S.D.N.Y. July 21, 2016); *United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003).
[106] 18 U.S.C. § 3238; *see also United States v. Miller*, 808 F.3d 607 (2d Cir. 2015).
[107] *United States v. Kurniawan*, Final Jury Instruction, 12-cr-376 (RMB), Dkt. 109, 199 (S.D.N.Y. Dec. 17, 2013); *see also United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171, 96 (S.D.N.Y. Oct. 13, 2017); *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67, 84 (S.D.N.Y. July 21, 2016).

**_Defense Objection_**: Defendants object to the Government's instruction on venue, and propose their alternative instruction on the following page.  The Government's proposal fails to clarify that an overt act in furtherance of the conspiracy must have taken place in this District for venue to be proper.

In addition, the fact of the arrest, and the language regarding the location of the arrest, are unfairly prejudicial and improperly suggest that Defendants lived in the District or were arrested in the District, when in fact they voluntarily waived extradition to come to the District to stand trial.  Defendants have also proposed an instruction regarding their waiver of extradition.

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.44

## <u>VENUE</u>

In addition to the foregoing elements of the offense, you must consider whether a Defendant committed an act in furtherance of the alleged illegal agreement within the Southern District of New York, which includes, among other places, all of Manhattan and the Bronx. This means, with regard to the illegal agreement charged in the Indictment, that you must decide whether the alleged unlawful agreement itself, or any act committed by a Defendant to further or promote the scheme, occurred within the Southern District of New York.

I should note on this issue, and this issue alone, the government need not prove venue— this is called the venue requirement—beyond a reasonable doubt, but only by a mere preponderance of the evidence. Thus, the government has satisfied its venue obligations if you conclude that it is more likely than not that any act committed by a Defendant in furtherance of the illegal agreement charged occurred in the Southern District of New York, which, again, includes, among other places, Manhattan and the Bronx.[108]

---

***Government Objection***:  The Government's proposed jury instruction accurately states that any act in furtherance of the conspiracy *by any co-conspirator in the district* can establish venue. Defendants' proposed venue instruction states that only acts committed by Defendants themselves can establish venue in the Southern District of New York. This is a mischaracterization of the law. Further, the proposed instruction leaves out that the Government can establish venue under 18 U.S.C. § 3238, in any district where Defendants were arrested. Defendants were arrested in the Southern District of New York by the FBI at 26 Federal Plaza, and the Government will offer proof of this at trial.

---

[108] *See United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67 (S.D.N.Y. July 21, 2016); *see also* Sand, *Modern Federal Jury Instructions*, Instr. 3-11; ABA *Model Criminal Antitrust Jury Instructions* 85 (2009); *United States v. Smith*, 198 F.3d 377, 382 (2d Cir. 1999) ("In a conspiracy prosecution, 'venue is proper in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators.'" (quoting *United States v. Naranjo*, 14 F.3d 135, 147 (2d Cir. 1994))); *United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171 (S.D.N.Y. Oct. 13, 2017); *United States v. Kurniawan*, Final Jury Instructions, 12-cr-376 (RMB), Dkt. 109 (S.D.N.Y. Dec. 17, 2013); *United States v. Swanson*, Final Jury Instructions, 06-cr-692 (PJH), Dkt. 337 (N.D. Cal. Mar. 10, 2008).

## GOVERNMENT PROPOSED FINAL INSTRUCTION NO. 3.45

## STATUTE OF LIMITATIONS

The Indictment charges that the alleged conspiracy began at least as early as December 2007 and continuing at least through January 2013.[109]

The grand jury returned its Indictment of the defendants on January 10, 2017. There is a five-year statute of limitations which applies to the offense charged here. This means that the defendant cannot be found guilty unless you find beyond a reasonable doubt that the conspiracy existed at sometime within the period of the statute of limitations, which, for purposes of this case, is the period beginning after January 10, 2012.

You may consider evidence of a defendant's conduct prior to January 10, 2012, insofar as it tends to prove or disprove the existence of the conspiracy and the defendant's acts after that date.[110]

The government need not prove that the conspiracy existed exactly between the period charged in the Indictment, or that the conspiracy continued for the entire period charged in the Indictment. It is sufficient if the government proves beyond a reasonable doubt that the conspiracy existed during or reasonably near the time period alleged in the Indictment, and that the defendants joined the conspiracy some time during the period alleged in the indictment and continued to be a member to a time within the period of the statute of limitations.[111]

---

[109] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 4-A-1, 4-A-2 (2009).

[110] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 4-A-2 (2009).

[111] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 4-A-1 (2009).

***Defense Objection***:  Defendants object to the Government's proposed instruction, and propose an alternative instruction on the following page.  The Government's proposal misleadingly conflates two instructions—an instruction on the period of the conspiracy and an instruction on the statute of limitations.  Putting these two instructions together impermissibly suggests to the jury that the Government need not satisfy the statute of limitations so long as it proves that the "conspiracy existed during or reasonably near the time period alleged in the indictment."  This is legally incorrect.

**DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.45**

**STATUTE OF LIMITATIONS**

The Indictment charges that a single, continuous illegal agreement that began at least as early as December 2007 and continued through at least January 2013.

A five-year statute of limitations applies to the alleged illegal agreement. This means that you cannot find any Defendant guilty unless you find beyond a reasonable doubt that the charged illegal agreement existed within the period of the statute of limitations, that is, the period *after* January 10, 2012.[112]

> ***Government Objection***: The Government's proposal suggests using the ABA instruction in its entirety, as opposed to selectively as Defendants suggest, because it accurately and fully captures the law. Defendants' proposal is objectionable in that it strongly and improperly implies that only the conduct of the conspiracy that occurred after January 10, 2012 is relevant; conspiratorial conduct prior to that time is indeed relevant, as the Government's proposal makes clear.

---

[112] *See* ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* 4-A-2; *see also United States v. Purdy*, Final Jury Instructions, 16-cr-05 (RWS), Dkt. 95 (N.D. Ga. 2017); *United States v. Bai*, Final Jury Instructions, 09-cr-110 (SI), Dkt. 1251 (N.D. Cal. Oct. 9, 2013).

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.46

## FAIR WARNING

All of the Defendants in this case are citizens and residents of the United Kingdom, who worked for banks in London.  To convict foreign Defendants of a crime in the United States, you must find that the Defendants had "fair warning" that their conduct might subject them to criminal prosecution.  Fair warning exists where the conduct is self-evidently criminal, such as robbing a bank, committing a murder, or drug trafficking.  If you find that the Defendants did not have fair warning that their conduct was criminal, then you must acquit them.[113]

---

*Government Objection*: The Government proposes omitting this proposed instruction entirely. This is not an element of the charged offense and is not an issue for the jury to find. This Court has ruled that the defendants had fair warning. *See* Doc No. 95, at 14 and 15.

*Defense Comment*: The Defendants' proposed instruction accurately states the governing law in the Second Circuit on the due process "fair warning" requirement with respect to foreign criminal defendants.

---

[113] *See United States v. Al Kassar*, 660 F.3d 108, 119 (2d Cir. 2011) ("The idea of fair warning is that 'no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" (quoting *Bouie v. City of Colombia*, 378 U.S. 347, 351 (1964))); *United States v. Epskamp*, 832 F.3d 154, 169 (2d Cir. 2016) (finding no due process violation because the defendant's drug-trafficking behavior was "self-evidently criminal, and he had every reason to anticipate prosecution for his conduct").

## DEFENSE PROPOSED FINAL INSTRUCTION NO. 3.47

## <u>CONSCIOUSNESS OF INNOCENCE</u>

The Defendants are citizens and residents of the United Kingdom.  As you know, they are being prosecuted in the United States.  Under the United Kingdom's laws and the relevant international agreements, the United States Government could not have forced the Defendants to appear here in court to be tried except through a legal process known as extradition.  This process would have required the United States Government to ask a court in the United Kingdom to agree that the Defendants may be tried in the United States.

If the United States Government had attempted to extradite the Defendants, then the Defendants would have had a right to contest the extradition request.  They would have had an opportunity to persuade the United Kingdom court that, just as the Defendants were not prosecuted in the United Kingdom, they also should not be prosecuted in the United States.

The Defendants agreed to appear at trial voluntarily, without requiring the Government to extradite them.  In determining whether the Government has proven the Defendants' guilt beyond a reasonable doubt, you may consider whether each defendant's decision to appear voluntarily for trial indicates that he believes he is innocent.  The significance that you attach to the defendants' respective decisions to appear is a matter for your determination.[114]

---

[114]     *See United States v. Biaggi*, 909 F.2d 662, 692 (2d Cir. 1990) ("evidence of a defendant's innocent state of mind" may be "critical to a fair adjudication of criminal charges"); *United States v. Maloof*, 205 F.3d 819, 824-25 (5th Cir. 2000) (adopting *Biaggi*); *United States v. Rajaratnam*, No. 13-cr-00211, slip op. (S.D.N.Y June 6, 2014) (a defendant's decision to surrender rather than face extradition was admissible to show consciousness of innocence); *Scott v. Gov't of the United States of America*, [2018] EWHC 2021 (Admin.) (reversing decision to extradite an FX trader from the United Kingdom to the United States because extradition would "not [be] in the interests of justice").

***Government Objection***: The Government proposes omitting this proposed instruction entirely. Two courts in this district recently denied requests from similarly situated defendants who were traders in a global financial market where an extradition treaty existed. *See United States v. Connolly*, No. 1:16-cr-00370-CM (S.D.N.Y. May 15, 2018); *United States v. Allen*, No. 1:14-cr-00272 (JSR) (S.D.N.Y. Nov. 17, 2015).

In *Allen*, the Court decided to strike questions from the record regarding the defendants waiving extradition, because whether he waived extradition due to innocence or because extradition was inevitable, this would "create or inject confusion into the trial and into the deliberations." ECF No. 178, at 52:6–8. In this case, while it was not a foregone conclusion that Defendants would have been extradited, there is an extradition treaty between the United Kingdom and the United States that would have authorized Defendants' extradition.

Moreover, unlike the fraud charges in both the aforementioned cases, the Sherman Act is a general intent crime, and ignorance of the law or Defendants' consciousness of innocence is no defense. Instructing the jury on this issue would only serve to confuse the jury.

***Defense Comment***: The Defendants' consciousness of innocence is a critical component of the fair adjudication of this prosecution.  Given that the United Kingdom's Serious Frauds Office declined to prosecute them, the Defendants realistically expected that they could defeat extradition and avoid trial altogether.  Indeed, a British appellate court declined to extradite FX trader Stuart Scott on the day prior to the instant filing.  The defendants' decisions to appear for trial voluntarily represent powerful evidence of their innocent states of mind.  The jury should be permitted to consider that evidence.

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.48

### PUBLICITY – REMINDER

First, I ask you not to talk to each other about the case or about anyone who has anything to do with it until the end of the case when you go to the jury room to decide or deliberate on your verdict.

Second, please do not talk with anyone else about this case or about anyone who has anything to do with it until the trial has ended and you have been discharged as jurors.  I am using the term "talk" broadly.   I am referring to not only face-to-face or over the phone but also emailing, texting, tweeting, blogging, et cetera.  I am referring to any type of communication in any type of forum, including without limitation Facebook, MySpace, Twitter, Instagram, Snapchat, LinkedIn, YouTube, et cetera. Additionally, do not remain in the presence of other persons who may be discussing this case face-to-face, orally, or online.  "Anyone else" includes members of your family and your friends.  You may tell family and friends that you are a juror in a case, but do not tell them anything else about the case until after you have been discharged by me.

Third, do not let anyone talk, as I have broadly defined it, to you about the case or about anyone who has anything to do with it. If someone should try and talk to you about the case, please report that to me immediately. In this regard, I point out that the attorneys and the defendants are not supposed to talk to jurors even to offer a friendly greeting. So, if you happen to see any of them outside the courtroom or anybody related to the case, you should ignore them. And if they should ignore you, please don't take offense; they'll only be acting properly by not engaging with you.

Fourth, if there is any, do not read any news, internet stories, articles, blogs, or listen to any radio, TV, or internet reports about the case or about anyone who has anything to do with it.

Fifth, do not do any type of internet searches or any type of investigation about the case or any of the participants in the case on your own. The bottom line is that the parties are entitled to have you personally render a verdict in this case on the basis of your independent evaluation of the evidence presented in the courtroom. And obviously speaking to others about the case, including your family members, before you deliberate among yourselves or exposing yourself to evidence outside the courtroom in any way would compromise your jury service and fairness to the parties.[115]

---

[115] *United States v. Rahimi*, Preliminary Jury Instructions, 16-cr-760 (RMB), Dkt. 152 (S.D.N.Y. Sept. 28, 2017); *United States v. Arreola*, Preliminary Jury Instructions, 15-cr-824 (RMB), Dkt. 59 (S.D.N.Y. July 18, 2016); *United States v. Kurniawan*, Preliminary Jury Instructions, 12-cr-376 (RMB), Dkt. 97 (S.D.N.Y. Dec. 9, 2013).

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.49

## IMPROPER CONSIDERATION OF DEFENDANT'S RIGHT NOT TO TESTIFY

The defendants did not testify in this case. Under our Constitution, defendants have no obligation to testify or to present any other evidence, because it is the prosecution's burden to prove that a defendant is guilty beyond a reasonable doubt. That burden remains with the prosecution throughout the entire trial and never shifts to a defendant. A defendant is never required to prove that he is innocent. You may not attach any significance to the fact that the defendants did not testify. No adverse inference against the defendants may be drawn by you because they did not take the witness stand. You may not consider this against the defendants in any way in your deliberations.[116]

---

***Joint Comment***: The parties propose that this instruction be read only if applicable.

---

[116] *United States v. Kurniawan*, Final Jury Instruction, 12-cr-376 (RMB), Dkt. 109, 200 (S.D.N.Y. Dec. 17, 2013); *see also United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171, 100 (S.D.N.Y. Oct. 13, 2017); *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67, 87 (S.D.N.Y. July 21, 2016).

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.50

## CHARTS AND SUMMARIES (ADMITTED AS EVIDENCE)

Certain charts and summaries have been admitted into evidence. These exhibits purport to summarize the underlying evidence that was used to prepare them, and were shown to you to make the underlying evidence more meaningful and to aid you in considering the evidence. The charts and summaries are no better than the testimony or documents upon which they are based and are not themselves independent evidence. Therefore, you are to give no greater weight to these charts and summaries than you would give to the evidence on which they are based. It is for you to decide whether the charts and summaries correctly present the information contained in the testimony and in the exhibits on which they were based. You are entitled to consider the charts and summaries if you find that they are of assistance to you in analyzing and understanding the evidence.[117]

---

[117] *United States v. Kurniawan*, Final Jury Instruction, 12-cr-376 (RMB), Dkt. 109, 202 (S.D.N.Y. Dec. 17, 2013).

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.51

### <u>STIPULATIONS</u>

In this case you have also heard evidence in the form of stipulations of fact.  A stipulation of fact is an agreement between the parties that a certain fact is true.  You must regard such agreed facts as true.[118]

---

***Joint Comment***: The parties agree to modify this instruction as needed at trial.

---

---

[118] *United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171 (S.D.N.Y. Oct. 13, 2017); *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67 (S.D.N.Y. July 21, 2016); *United States v. Kurniawan*, Final Jury Instructions, 12-cr-376 (RMB), Dkt. 109 (S.D.N.Y. Dec. 17, 2013); *see also* Sand, *Modern Federal Jury Instructions*, Instrs. 5-5, 5-6.

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.52

## <u>RIGHT TO HEAR TESTIMONY: COMMUNICATIONS WITH COURT</u>

You are about to go into the jury room and begin deliberations. If during your deliberations you want any of the testimony read back to you, you may request for that to happen. You may also request to see any of the exhibits, and they will be sent to you in the jury room upon request. Please remember that if you do ask for portions of testimony or exhibits, the court reporter must search through his or her notes and the lawyers must agree on what portions of the testimony may be called for. And if they were to disagree, then I would have to resolve those disagreements. All that means is that, it can be a time-consuming process. So please try to be as specific as you possibly can in requesting testimony or exhibits if in fact you do so. Your requests for exhibits or testimony -- and in fact any communication with the Court -- should be made to me in writing, signed by your foreperson, and -- we'll come to that in a minute -- and given to one of the marshals who will be standing outside the jury room while you deliberate.[119]

---

[119] *United States v. Kurniawan*, Final Jury Instruction, 12-cr-376 (RMB), Dkt. 109, 205 (S.D.N.Y. Dec. 17, 2013); *see also United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171, 102-03 (S.D.N.Y. Oct. 13, 2017); *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67, 86 (S.D.N.Y. July 21, 2016).

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.53

### DUTY TO DELIBERATE AND REACH UNANIMOUS VERDICT

A verdict, as I said before, must be unanimous. Your verdict must represent the considered judgment of each juror. Whether your verdict is guilty or not guilty, it must be unanimous. Your function is to weigh the evidence in the case and determine whether or not the defendant is guilty, solely based upon such evidence. Each juror is entitled to his or her opinion. Each should, however, exchange views with his or her fellow jurors. That's the very purpose of jury deliberations -- to discuss and consider the evidence, to listen to the arguments of fellow jurors, to present your individual views, to consult with one another, and to reach an agreement based solely and entirely upon the evidence -- if you can do so without surrendering your own individual judgment. Each of you must decide the case for yourself after consideration with your fellow jurors of the evidence in the case. But you should not hesitate to change an opinion that, after discussion with your fellow jurors, may appear incorrect. If, after carefully considering the evidence and the arguments of your fellow jurors, you hold a conscientious view that differs from the others, you are not required to change your position simply because you are outnumbered. Your final vote must reflect your conscientious belief as to how the issues should be decided.[120]

---

[120] *United States v. Kurniawan*, Final Jury Instruction, 12-cr-376 (RMB), Dkt. 109, 208 (S.D.N.Y. Dec. 17, 2013); *see also United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171, 104-05 (S.D.N.Y. Oct. 13, 2017); *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67, 89-90 (S.D.N.Y. July 21, 2016).

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.54

## <u>SELECTION OF FOREPERSON</u>

When you go into the jury room, before you begin your deliberations, you will select someone to be your foreperson. And the foreperson can be any of the jurors -- the first juror, last juror, or any juror in between. You decide first who the foreperson is and then, that person will send me a note indicating they have been selected as the foreperson. Your foreperson will preside over the deliberations and speak for you all here in open court. The foreperson has no greater voice or authority than any other juror. The foreperson will send out any notes and, when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict.[121]

---

[121] *United States v. Kurniawan*, Final Jury Instruction, 12-cr-376 (RMB), Dkt. 109, 208 (S.D.N.Y. Dec. 17, 2013); *see also United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171, 105 (S.D.N.Y. Oct. 13, 2017); *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67, 90 (S.D.N.Y. July 21, 2016).

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.55

### <u>VERDICT SHEET</u>

I will give you a verdict sheet, as I mentioned before, or form to be filled in by the jury. The purpose of the questions on the form is to help us, that is to say, the Court and counsel and the parties, to understand what your findings are.  I will hand this form to the clerk, Christine, who will give it to you so that you may record the decision of the jury with respect to each question.

No inference is to be drawn from the way the sheet is worded.  The wording in the verdict sheet is not to be taken as any indication that I have any opinion on the verdict itself.  I have no such opinion, and even if I did, it would not be binding on you.

Before you attempt to complete the verdict sheet, you should read it and make sure everybody on the jury understands it.  Before rendering your verdict, you should deliberate in the jury room and discuss the evidence.  When you have considered the charges, and the evidence that relates to those charges, record your verdict with check marks on the form that I will give you.  Remember, all answers must be unanimous.[122]

---

[122] *See United States v. Rahimi*, Final Jury Instructions, 16-cr-760 (RMB), Dkt. 171 (S.D.N.Y. Oct. 13, 2017); *United States v. Arreola*, Final Jury Instructions, 15-cr-824 (RMB), Dkt. 67 (S.D.N.Y. July 21, 2016); *United States v. Kurniawan*, Final Jury Instructions, 12-cr-376 (RMB), Dkt. 109 (S.D.N.Y. Dec. 17, 2013).

## JOINT PROPOSED FINAL INSTRUCTION NO. 3.56

## <u>CLARIFICATION OF INSTRUCTIONS</u>

If you do not understand or have forgotten any portion of my instructions, you may request that any portion of my instructions be read back, clarified, or explained.[123]  Again, your request should be made to me in writing, signed by your foreperson, and given to one of the marshals.

---

[123] *United States v. Taubman*, Final Jury Instructions, 01-cr-429 (GBD) (S.D.N.Y. Dec. 4, 2001).

122

Dated: August 1, 2018                    Respectfully submitted,


By: /s/ *Michael Kendall*

     Michael Kendall (*pro hac vice*)
     WHITE & CASE LLP
     75 State Street
     Boston, MA 02109
     Telephone: (617) 979-9310
     Email: michael.kendall@whitecase.com

     J. Mark Gidley (*pro hac vice*)
     WHITE & CASE LLP
     701 Thirteenth Street, N.W.
     Washington, DC 20005
     Telephone: (202) 626-3609
     Email: mark.gidley@whitecase.com

     *Attorneys for Defendant Richard Usher*

     Heather S. Tewksbury (*pro hac vice*)
     WILMER CUTLER PICKERING
     HALE AND DORR LLP
     950 Page Mill Road
     Palo Alto, California 94304
     Telephone: (650) 858-6134
     Email: heather.tewksbury@wilmerhale.com

     Anjan Sahni
     WILMER CUTLER PICKERING
     HALE AND DORR LLP
     7 World Trade Center
     250 Greenwich Street
     New York, NY 10007
     Telephone: (212) 937-7418
     Email: anjan.sahni@wilmerhale.com

     *Attorneys for Defendant Rohan Ramchandani*

David Schertler (*pro hac vice*)
Lisa Manning (*pro hac vice*)
SCHERTLER & ONORATO, LLP
901 New York Ave., N.W. Suite 500
Washington, D.C. 20001
Telephone: (202) 628-4155
Email: dschertler@schertlerlaw.com
Email: lmanning@schertlerlaw.com

*Attorneys for Defendant Christopher Ashton*