**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

  v.

RICHARD USHER, ROHAN
RAMCHANDANI, and CHRISTOPHER
ASHTON,

   Defendants.

Case No. 1:17-Cr-00019

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
PERMISSION TO SERVE RULE 17(C) SUBPOENAS**

Defendants Richard Usher and Christopher Ashton (collectively, "Defendants") move the

Court to authorize service of the three subpoenas *duces tecum* attached to this motion (the

"Proposed Subpoenas") pursuant to Federal Rule of Criminal Procedure 17(c).  The Proposed

Subpoenas, which request a pre-trial return date of September 14, 2018,[1] are directed to:

- Putnam Investments ("Putnam") (Ex. A);

- California Public Employees' Retirement System ("CalPERS") (Ex. B); and

- Nex Group Plc, the entity that owns the trading platform formerly known as
  Electronic Broking Services and now known as the EBS Market ("EBS") (Ex. C).

As discussed below, the Proposed Subpoenas target specific evidence that Defendants

need to present their defenses at trial.  Defendants have met and conferred with the Government;

the Government consents to certain of Defendants' document requests and opposes others, as

detailed below in Section II.B.

---

[1]  Defendants request the Court's guidance as to whether the documents should be produced to
the Court for counsel's inspection, or to counsels' offices.

## I.     LEGAL STANDARD

Rule 17(c) allows defendants to subpoena evidence for use in their defense.  Where trial is likely to be protracted and the underlying issues are complex—as in this case—the rule permits a defendant, on motion to the court, to request that the subpoenaed evidence be produced prior to trial.  *See* Fed. R. Crim. P. 17(c).  Under *United States v. Nixon*, a party seeking pre-trial production under Rule 17(c) must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

418 U.S. 683, 699-700 (1974).  *Nixon* expressly left open the possibility of applying a different, lower standard to non-party subpoenas, however.  *Id.* at 699 n.12 ("We need not decide whether a lower standard exists [for non-party subpoenas] because we are satisfied that the relevance and evidentiary nature of the subpoenaed tapes were sufficiently shown as a preliminary matter to warrant the District Court's refusal to quash the subpoena.").  Accordingly, some courts require that defendants seeking documents from non-parties show only that the documents are "material to the defense" and that production would not be "unduly oppressive [to] the producing party." *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008); *see also, e.g.*, *United States v. Nosal*, 291 F.R.D. 403, 408 (N.D. Cal. 2013).

## II.    ARGUMENT

### A.     The Proposed Subpoenas Target Documents That Are Evidentiary and Relevant, and Defendants Make This Application In Good Faith and Not as a General "Fishing Expedition."

Defendants seek several narrowly defined categories of documents and data, identified in the Proposed Subpoenas, that are necessary to effectively meet the Government's case at trial. Defendants make these requests in good faith and not as a general "fishing expedition."

2

Representatives from Putnam and CalPERS will be testifying for the Government at trial as purported "victims" of Defendants' conduct. Although Putnam and CalPERS engaged in thousands of EUR/USD transactions over the five-year period of the alleged conspiracy, the Government produced to Defendants *only eight days* of trading data from Putnam and CalPERS, collectively. Defendants seek to counter the Government's selective presentation of evidence with a fuller picture of Putnam and CalPERS's interaction with the EUR/USD market that Defendants supposedly manipulated—including the full context of their trading on the eight days the Government chose (those eight days are among the 53 dates listed in Request No. 1 in the Proposed Subpoenas to Putnam and CalPERS), evidence of their EUR/USD trading on days *other* than the eight days the Government selected, and evidence of the nature of their overall participation in the foreign exchange market—as well as evidence that would show the Government's winnowing process was flawed and misleading.

EBS is the trading platform on which the Government alleges Defendants executed their price-fixing agreement. The Government's case will rely in significant measure on data that EBS produced to the Government, but will present to the jury an incomplete picture of the significance of that data. Defendants seek from EBS additional evidence that would assist the jury in drawing informed and correct inferences about the significance of Defendants' trading activity on EBS.

### 1.    Putnam & CalPERS

The Government has designated as trial exhibits two spreadsheets that Putnam and CalPERS created at the Government's request. These spreadsheets contain a total of eight days of trading data for these two purported "victims" (six for CalPERS, and five for Putnam, with some overlap). Putnam and CalPERS executed thousands of EUR/USD trades over the course of the alleged five-year conspiracy period. The Government produced *summaries* of its

3

communications with Putnam and CalPERS that show the Government engaged in a substantive

winnowing process with those entities to choose the eight days presented in the spreadsheets, but

the Government has refused to produce its actual communications with Putnam and CalPERS

that document the nature of that selection process.

      The Proposed Subpoenas to Putnam and CalPERS seek from each entity the evidence

Defendants need to fill these critical gaps, specifically:

- Full EUR/USD trading data for each day covered by the Government's alleged collusive trading "episodes" (including the eight days the Government selected);

- EUR/USD fix trading data over the course of the alleged conspiracy period;

- Data dictionaries sufficient to interpret the trading data produced;

- Documents memorializing communications between Putnam or CalPERS and the Government (*i.e.*, the communications the Government has summarized rather than providing, plus any communications the Government may have elected not even to summarize); and

- Documents sufficient to show the nature of each entity's relationship to the banks that employed Defendants and their alleged co-conspirators.

      The requested documents are both relevant and evidentiary. Defendants expect the

Government will argue—based on the trading data in the spreadsheets—that Defendants'

conduct "harmed" Putnam and CalPERS. Defendants are entitled to counter this assertion by

presenting to the jury a more comprehensive and accurate picture of Putnam and CalPERS's

participation in the EUR/USD market, including through evidence of their EUR/USD trading on

days *other* than the eight days.

      Defendants also seek copies of the Government's communications with Putnam and

CalPERS that the Government refuses to produce. The Government's summaries of the

communications are insufficient. They may not be complete, and would be difficult to admit as

evidence. In showing the jury how the Government-directed winnowing process was flawed and

misleading, Defendants should not be forced to rely on the Government's own characterization of its process. *See, e.g., Wiggins v. United States*, 386 A.2d 1171, 1178 (D.C. 1978) (Ferren, J. concurring) ("The fact that the government told him the names of grand jury witnesses and summarized their testimony did not necessarily meet defendant's needs.   If, for example, when defense counsel interviewed these witnesses, they had told their stories at variance with the prosecutor's report of their grand jury statements, counsel would not have been able to confront them during the interviews as effectively as counsel could have with a transcript in hand.   Nor, more importantly, can we assume that the prosecutor summarized the grand jury statements with every detail that might have been relevant to defense counsel's preparation—as counsel viewed the case.").

Finally, Defendants also seek evidence to establish the nature of Putnam and CalPERS's customer relationship with the banks that employed Defendants and their alleged co-conspirators.  Defendants expect that the Government, and possibly Putnam and CalPERS representatives, may present to the jury an incomplete picture of this relationship.

### 2.    EBS

The Government claims that Defendants carried out their price-fixing conspiracy on the EBS trading platform, and will rely heavily on EBS data in presenting its case.  In particular, in connection with the testimony of its expert Jeremy Tilsner, the Government has produced a few dozen spreadsheets that rely heavily on EBS data.  However, Defendants have not located a single communication between the Government or Mr. Tilsner and EBS in the reams of documents the Government has produced to Defendants.  Defendants also lack the information sufficient to identify who made the trades identified in the EBS data, because traders are only identified on EBS by three-letter codes.  The scope and size of the foreign exchange market (of

which EBS is only a fraction) is critical evidence to respond to the Government's claim that

Defendants' conduct had a substantial effect on U.S. commerce.

Defendants' Proposed Subpoena to EBS therefore seeks the following evidence:

- Documents memorializing communications between EBS and the Government or its agents and consultants;

- Documents sufficient to identify all EBS trader codes active from 2007 through 2013, inclusive, and the individual traders and institutions associated with those codes; and

- Documents sufficient to show the EBS market share of the foreign exchange market for each year from 2007 through 2013, inclusive, including documents sufficient to explain the parameters of that market share calculation.

This evidence is relevant and evidentiary. The Government has provided summaries of

some of its communications with EBS. These summaries make clear that the communications

were both substantive and relevant, but the Government nevertheless refuses to provide them to

Defendants. Defendants need the full communications. The Government's summaries do not

have the same evidentiary value as the underlying letters and emails, and they rely on the

Government's characterization of facts that are critical to the defense. Defendants also need the

trader codes and market share evidence to present to the jury a fuller picture of the significance

of the EBS data on which the Government will rely at trial.

**B.      Defendants Cannot Otherwise Procure the Documents And Cannot Properly Prepare for Trial Without Pre-Trial Inspection of the Documents.**

Defendants have no means of obtaining this evidence other than through the Proposed

Subpoenas. The information is not available from any public source and the Government has

stated that it does not possess the evidence and will not attempt to obtain it (or, in the case of the

Government's communications with the subpoena recipients, that the Government will not

produce those communications). *See United States v. Carollo*, 2012 U.S. Dist. LEXIS 50568, at

*7-8 (S.D.N.Y. Apr. 9, 2012) (noting that defendant "has no reasonable means of obtaining the[] documents but through a subpoena [because the government does not have them]").

The Government opposes Defendants' requests for communications between the Government and the subpoena recipients; fix trading data from CalPERS and Putnam over the alleged conspiracy period; and documents sufficient to show EBS market share.  The Government does not oppose Defendants' other requests.

Defendants' counsel has spoken to counsel for Putnam and CalPERS; each entity has stated that it will not provide the requested documents except in response to a subpoena.  The Government first provided the name of its US-based contact for EBS on August 30, 2018 (Shari Brandt, Esq., of Richards Kibbe & Orbe LLP).  Defendants' counsel contacted Ms. Brandt, but she will be unable to confirm until Tuesday, September 4, whether EBS requires a subpoena to produce the requested documents.

Defendants request pre-trial production of these documents as this will help expedite the trial and avoid unnecessary delays.  *Nixon*, 418 U.S. at 698.  This is a complex criminal case, and Defendants need time to analyze the trading data evidence in order to present it in a form comprehensible to the jury.  Delaying production of this critical evidence until the start of trial risks unnecessarily prolonging the trial as Defendants evaluate how to use the evidence in their trial presentations.  *See id.* at 699 n.11 ("The Manual for Complex and Multidistrict Litigation . . . recommends that use of Rule 17(c) [for pre-trial production] be encouraged in complex criminal cases.").

### C.    The Proposed Subpoenas Also Satisfy The Tucker Standard.

The Proposed Subpoenas also satisfy the less demanding *Tucker* standard.  As described above, the requested documents are relevant and evidentiary, and thus "material" to the defense. It would not be difficult, and surely not "unduly oppressive," for Putnam, CalPERS, or EBS to

7

produce the requested documents.  Financial institutions like Putnam and CalPERS have

reporting requirements and presumably systematically track their trading transactions in the

regular course of business.  A trading platform like EBS likewise should have ready access to its

own data.  The volume of the other documents requested is small.  *See Tucker*, 249 F.R.D. at 66.

## III.     CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court authorize the

Proposed Subpoenas.

Date: New York, New York                        Respectfully submitted
        August 31, 2018

                                                By: */s/  Michael Kendall*

David Schertler (*pro hac vice*)                Michael Kendall (*pro hac vice*)
Lisa Manning (*pro hac vice*)                   WHITE & CASE LLP
SCHERTLER & ONORATO, LLP                        75 State Street
901 New York Ave., N.W.                         Boston, MA 02109
Suite 500                                       Telephone: (617) 979-9310
Washington, D.C.  20001                         Email: michael.kendall@whitecase.com
Telephone: (202) 628-4155
Email: dschertler@schertlerlaw.com              J. Mark Gidley (*pro hac vice*)
Email: lmanning@schertlerlaw.com                WHITE & CASE LLP
                                                701 Thirteenth Street, N.W.
*Attorneys for Defendant Christopher Ashton*    Washington, DC 20005
                                                Telephone: (202) 626-3609
                                                Email: mgidley@whitecase.com

                                                Andrew E. Tomback
                                                WHITE & CASE LLP
                                                1221 Avenue of the Americas
                                                New York, NY 10020
                                                Telephone:  (212) 819-8428
                                                andrew.tomback@whitecase.com

                                                *Attorneys for Defendant Richard Usher*

EMEA 118782811 v1